**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
                                          :
THOMAS E. MILES                           :
                                          :
                        Plaintiff,        :
        -against-                         :              **14 civ. 09302 (VSB)**
                                          :
THE CITY OF NEW YORK,                     :              **3rd Amended Complaint**
NYPD OFFICER SEAN AMAN,                   :
NYPD OFFICER KEVIN BUTT,                  :              **JURY TRIAL DEMANDED**
NYPD OFFICER CYNTHIA ACERRA,              :
DR. SUSI VASSALLO, M.D.                   :
EMT ADAM VASQUEZ,                         :
P. A. JOSEPH McCREADY,                    :       ┌─────────────────────────────┐
NYCDOC CAPT. WILLIAM SMITH,               :       │ USDC SDNY                   │
NYCDOC CAPT. MANUEL GONZALEZ,             :       │ DOCUMENT                    │
NYCDOC OFFICER DUANE GROCE,               :       │ ELECTRONICALLY FILED        │
                                          :       │ DOC #:_____           │
                        Defendants        :       │ DATE FILED: 2/2/17          │
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx              └─────────────────────────────┘

        Plaintiff, THOMAS E. MILES, Pro-Se; In Forma Pauperis, complaining of the Defendants,
THE CITY OF NEW YORK, NYPD OFFICER SEAN AMAN, NYPD OFFICER KEVIN BUTT,
NYPD OFFICER CYNTHIA ACERRA, DR. SUSI VASSALLO, M.D., ADAM VASQUEZ, E.M.T.,
JOSEPH McCREADY, P.A., NYCDOC CAPT. WILLIAM SMITH, NYCDOC CAPT. MANUEL
GONZALEZ, NYCDOC OFFICER DUANE GROCE, alleges as follows:

                        **PRELIMINARY STATEMENT**

1.    This is an action at law to redress the deprivation and violation of Plaintiff THOMAS E.
      MILES' civil rights, privileges, and immunities as guaranteed and protected by the United
      States Constitution and under Title 42 U.S.C. § 1983 and Title 42 U.S.C.§ 1395dd of the
      United States Code. This is also an action at law to redress the grievous physical injuries,
      mental and emotional injuries, pain and suffering, permanent, life-changing physical and
      mental disabilities, and their associated pain and suffering in perpetuity, loss of wages, loss
      of opportunity to earn wages, sustained by PLAINTIFF, THOMAS E. MILES, as a direct
      result of the intentional, malicious, reckless, and wanton acts of the individual Defendants
      and Defendant THE CITY OF NEW YORK, through and by some its individually named
      Defendant Police Officers, Correction Officers, Medical Doctor, Physician's Assistant,
      Emergency Medical Technician, and other of its agents and subsidies.

                        **JURISDICTION**

2.    Jurisdiction is specifically conferred on the United States District Court by Title 28
      U.S.C. § 1331 this being an action arising under the U.S. Constitution and Federal Law,
      and by Title 28 U.S.C. § 1343 (a)(3), this being an action at law to redress the deprivation,

under color of statute, ordinance, regulation, custom or usage, of rights, privileges, and immunities secured to Plaintiff, THOMAS E. MILES, by the U.S. Constitution and by Title 42 U.S.C. § 1983 and Title 42 U.S.C. § 1395dd.

## VENUE

3.      Venue is properly laid in the United States District Court for the Southern District of New York under Title 28 U.S.C. § 1391(b) and that the events that give rise to the instant action occurred in New York County, in the State of New York, which lies within the jurisdiction of this Court.

## JURY TRIAL DEMANDED

4.      Plaintiff THOMAS E. MILES respectfully demands a trial by jury of all the issues in this matter pursuant to Fed. R. Civ. P. 38(b) and pursuant to this Honorable Court's order of January 26, 2015 issued by the Hon. Vernon S. Broderick, U.S.D.J.

## PARTIES

5.      Plaintiff, THOMAS E. MILES is a white male, 54 years of age; a natural-born citizen of the United States, and is currently an inmate at the Great Meadow Correctional Facility Post Office Box 51 Comstock, NY 112821-0051

6.      The individual Defendants are specifically identified as follows:

NYPD OFFICER SEAN AMAN, (Hereinafter "AMAN") Shield No. 29975 For Defendant: Ms. Katherine Byrns, Esq. Assistant Corporation Counsel, Law Department City of New York, Special Federal Litigation Department, 100 Church Street New York, NY 10007.

NYPD OFFICER KEVIN BUTT, (Hereinafter "BUTT") Shield No. 8916, Resigned. For Defendant: Ms. Katherine Byrns, Esq. Assistant Corporation Counsel, Law Department City of New York, Special Federal Litigation Department, 100 Church Street New York, NY 10007.

NYPD OFFICER CYNTHIA ACERRA, (Hereinafter "ACERRA" or "ACERRO") Shield No. 20743, NYPD Legal Bureau, One Police Plaza, Room 1406 New York. NY 10038. For Defendant: Ms. Katherine Byrns, Esq. Assistant Corporation Counsel, Law Department City of New York, Special Federal Litigation Department, 100 Church Street New York, NY 10007.

DR. SUSI VASSALLO, M.D., (Hereinafter "VASSALLO") For Defendant: Ms. Austa S. Devlin, Esq., Heidell, Pittoni, Murphy & Bach, LLP 99 Park Avenue New York, NY 10016-1601.

EMT ADAM VASQUEZ, (Hereinafter "VASQUEZ"). Shield No. 3414 NYCFD CDLS

Unit 9 Metro Tech Center Brooklyn, NY 11201. For Defendant: Ms. Katherine Byrns, Esq. Assistant Corporation Counsel, Law Department City of New York, Special Federal Litigation Department, 100 Church Street New York, NY 10007.

NYCDOC CAPT. WILLIAM SMITH, (Hereinafter "SMITH") Shield No. 1014, Manhattan Detention Complex 125 White Street New York, NY 10013. For Defendant: Ms. Katherine Byrns, Esq. Assistant Corporation Counsel, Law Department City of New York, Special Federal Litigation Department, 100 Church Street New York, NY 10007.

NYCDOC CAPT. MANUEL GONZALES, (Hereinafter "GONZALEZ") Shield No. Unknown, Retired. For Defendant: Ms. Katherine Byrns, Esq. Assistant Corporation Counsel, Law Department City of New York, Special Federal Litigation Department, 100 Church Street New York, NY 10007.

JOSEPH McCREADY, P.A., (Hereinafter "McCREADY") Corizon Correctional Health Corporation 49-04 19th Avenue Astoria, NY 11105. For Defendant: Ms. Katherine Byrns, Esq. Assistant Corporation Counsel, Law Department City of New York, Special Federal Litigation Department, 100 Church Street New York, NY 10007.

NYCDOC OFFICER DUANE GROCE, (Hereinafter "GROCE") Shield No. 11474, Manhattan Detention Complex 125 White Street New York, NY 10013. For Defendant: Ms. Katherine Byrns, Esq. Assistant Corporation Counsel, Law Department City of New York, Special Federal Litigation Department, 100 Church Street New York, NY 10007.

THE CITY OF NEW YORK, (Hereinafter "CITY") For Defendant: Ms. Katherine Byrns, Esq., Assistant Corporation Counsel, Law Department City of New York, Special Federal Litigation Department, 100 Church Street New York, NY 10007.

7. Defendant CITY was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and within the jurisdiction of this Court and was the employer of the individual Defendants.

8. Defendant CITY maintains the New York City Police Department (hereinafter NYPD) the New York City Fire Department (hereinafter NYFD), the New York City Department of Correction (hereinafter NYCDOC), the NYC Health and Hospitals Corporation (hereinafter "NYCHHC"), that includes but is not limited to maintaining Bellevue Hospital (hereinafter "BELLEVUE"), the New York City Department of Health and Mental Hygiene (hereinafter "NYCDHMH") that includes but is not limited to maintaining the Corizon Correctional Health Corporation of Brentwood, TN that was responsible for providing and administering health care to inmates and detainees at, but not limited to, the Manhattan Detention Complex (hereinafter "MDC"), and the Rikers Island Jail Complex (hereinafter "RIKERS"); all duly authorized Public Authorities and/or Police Department, Correction Department, Fire Department, and Public Hospital as per applicable sections of the aforementioned municipal corporation, City of New York.

9.    That at all times hereinafter mentioned the individually named Defendants, AMAN, BUTT, ACERRA, VASSALLO, VASQUEZ, SMITH, GONZALES, McCREADY, GROCE, were employees of Defendant CITY and were duly sworn Police Officers, and/or Correction Officers, and/or Licensed Medical Doctor, and/or Licensed Physician's Assistant, and/or Licensed EMT, and were acting under the supervision of their said department(s) and according to their official rules.

10.    That at all times hereinafter mentioned the Defendants, either personally or through their employers, were acting under color of State Law, Federal Law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the United States under the Constitution of the United States, the United States Code, the State of New York, and the City of New York.

## STATUTE OF LIMITATIONS
(CPLR § 203 (g) Time Computed From Actual or Imputed Discovery of Facts)

11.    The events that give rise to the instant action occurred on December 05, 2011. Plaintiff was not aware or made aware that the malfeasance and bad acts of the Defendants described herein, that were the proximate cause of Plaintiff's serious injuries, pain, and suffering were such that they merited a plausible claim where damages could be sought against the defendants until February 22, 2016 and as such the statute of limitations DO NOT begin to run as of December 05, 2011.

12.    The proper date for the commencement of the three (3) year statute of limitations according to the Laws of the State of New York is February 22, 2012 as that is the date of accrual of Plaintiff's causes of action.

13.    It was not until February 22, 2012 that Plaintiff was informed by medical staff, as stated herein, that his serious injuries he sustained consisted of, inter alia, four (4) fractures to his pelvis, spinal disc damage, and nerve damage and that was the date Plaintiff knew or had reason to know that he had an actionable complaint.

14.    Before February 22, 2012 Plaintiff was told by the Defendants that "nothing was wrong" with him as pertains to his health condition and he did not become aware that he had in fact sustained four (4) pelvic fractures, spinal disc tissue damage, nerve damage, and other injuries until he was informed so by an NYCDOC Doctor on or about February 22, 2012.

15.    Before February 22, 2012 Plaintiff, being unaware of the existence of his serious injuries, could not commence legal action by complaining in essence that, "I think someone hurt me…", or, "I may, possibly have been injured…" because a complaint such as that would have no factual basis to state a claim, and it would be frivolous, futile, and insufficient on its face and clearly not plausible.

16.     Plaintiff, after timely filing the instant action, was in no way or at any time dilatory in the prosecution of his claim. Plaintiff provided all requested documents to Defense Counsel Ms. Katherine Byrns INCLUDING notarized authorization for the release of his medical records - contrary to assertions made by Defendant VASSALLO.

17.     The record [docket] shows this to be true and can further be confirmed by Defense Counsel Ms. Byrns.

18.     Plaintiff did indeed receive an order to compel him to produce said medical release(s) but this order seems to be in error by nature of the fact that the order was issued long after Plaintiff HAD ALREADY COMPLIED with Defense Counsel Byrns' request for said release(s).

19.     Moreover, after receiving said order Plaintiff immediately called Defense Counsel Ms. Byrns on the telephone to ensure she was in receipt of said releases; she indicated that she was in receipt of said releases and told Plaintiff that she did not know why the court issued said order and that she would correct the record with a letter to the Court and that on Plaintiff's information and belief Defense Counsel Ms. Byrns did exactly that.

20.     Further, since Plaintiff's initial, timely filing of the instant action Plaintiff has prosecuted the instant action within all bounds and limitations of the law rules and within all bounds and limitations of any and all enlargements of time granted by the Court nor were any objections made by Defense Counsel(s) to any proposals of Plaintiff's requests for any enlargements of time and it is worthy of note that the Court not only granted plaintiff leave to amend his complaint on three occasions; the court did not dismiss, sua sponte, the complaint or any of the amended complaints on the grounds of an expiration of statute of limitations, failure to state a claim, and/or futility and as such any and all the time that has elapsed since Plaintiff's initial, timely filing of the instant action  cannot be attributed to any dilatoriness of Plaintiff.

21.     Furthermore, and specific to Defendant VASSALLO, the time that elapsed from Plaintiff's initial, timely filing and the service of process on Defendant VASSALLO cannot be attributed to any dilatoriness on behalf of Plaintiff but in fact is attributable to Corporation Counsel for the Defendants whereby counsel for the Defendants was seemingly unaware that Defendant VASSALLO, although an employee of Defendant CITY, was to be represented by outside counsel and outside Counsel for Defendant VASSALLO did not file a Notice of Appearance until May 12, 2016. Moreover Defendant VASSALO'S request for Plaintiff's notarized release of his medical records was dated May 12, 2016 and Plaintiff sent via U.S. Mail said notarized release on May 20, 2016 the very day Plaintiff received said request. Thus, Plaintiff VASSALO'S assertions that Plaintiff was dilatory are without merit.

22.     Accordingly, as set forth herein, the instant action in accordance with New York State Law is in fact not time-barred.

## RELATION BACK; IDENTIFICATION OF DEFENDANTS
### Under CPLR § 1024

23.   The New York State Civil Practice and Procedure (CPLR), with regard to the identification of Defendants in an action at law provides, in relevant part, in CPLR § 1024 that:

24.   "A party who is ignorant of the name or identity of one who may properly be made a Party may proceed by designating so much of his identity as is known, but summons served in a "John Doe" form is jurisdictionally sufficient only if the actual Defendants are adequately described and would have known from the description on the complaint that they were the intended Defendants."

25.   Moreover the Defendant whose name is unknown must be described in such a way as to *fairly apprise* [emphasis added] the party that he or she is an intended defendant and a factually detailed complaint will contribute to identification of the relevant transaction or occurrence and those who were involved, for further serving to give the intended Defendant(s) fair notice of his or her identity.

26.   It has been suggested by the Courts in Olmstead that the necessary descriptive elements should be analyzed not from the vantage point of a member of the lay public but that of a member of the Defendant's trade or occupation. Plaintiff's description of the Defendants in the original, timely filed complaint's caption as well as Plaintiff's descriptions of the defendants in the pleadings which included specific dates, times, locations, titles, occupations, and specific actions carried out by Defendants are all elements that would cause the defendants to know that they were intended Defendants *especially* if seen through the eyes of a member of Defendant's trade or occupation. [Olmstead v. Pizza Hut of America 2006 28 A.D. 3d 855; 813 N.Y.S. 2d 241 (3rd Dep't)]

27.   The description of Defendant AMAN in the original, timely filed complaint, identifies him as: "NYPD Officer making arrest on 12/05/2011 at 4:40pm near 160 Broadway New York, NY " and his identification is supported by the specific, unique acts described in the pleadings that he committed on that specific date, time and location that narrows his identification down to only one possible person on Earth that meets that description – that of Defendant AMAN - and the same is true pertaining to the description and the factually detailed complaint for each of the individual Defendants.

28.   The Defendants, being employed in their aforementioned occupations, trades, and/or professions and by the nature of their occupations, trades, and/or professions are not lay persons nor are they persons of average abilities and/or skills regarding, but not limited to, attention to detail, observation, and memory. In fact, by nature of their occupations, Defendants are better than average in their aforementioned skills, and/or abilities by nature of their occupations, and the events described in the original, timely filed complaint were sufficiently described such that even a lay person would know that they were an intended Defendant *and even more easily so* by the Defendants.

29.   Had any of the individual Defendants picked up [read] a copy of the original pleading, they would immediately have recognized that they and no one else was being sued based

on the description of their job title, the specific dates, times, and locations stated, and the specific acts of the individual Defendants alleged in the complaint.

30.   Accordingly, the Defendants were sufficiently identified in the original, timely filed complaint and as such the instant action is not time barred by:

A.   Defendants as described in the original, timely filed complaint were described in such a way as to *fairly apprise* the Defendants that they were intended Defendants and the factually detailed complaint contributes to the identification of the relevant transaction or occurrence and those who were involved, for further serving to give the intended Defendant(s) fair notice of their identities and,

B.   That Plaintiff satisfied his due diligence requirements as described herein OR that Plaintiff's due diligence requirements are excused due to his diminished capacity and disabilities as described in the foregoing.

## RELATION BACK; DUE DILLIGENCE

31.   As a direct result of the physical and mental injuries sustained by Plaintiff that were directly caused by the Defendants as described herein, Plaintiff was physically disabled as classified by the Social Security Administration through the Disability Insurance Benefits Program as of December 05, 2011 and was mentally disabled as diagnosed by his Psychiatrist Dr. Edwin Robbins.

32.   Plaintiff as a direct result of the Defendant's actions described herein suffered and continues to suffer limited physical mobility, chronic, substantial physical pain, that required and continues to require drug therapy, and Plaintiff suffered and continues to suffer mental, emotional, and psychological disabilities including but not limited to depression, and sleep disorder that also require drug therapy.

33.   As such Plaintiff's ability to conduct due diligence in order to identify the individual, uniformed Defendants by name and shield number, and the individual civilian Defendants by name, was substantially hampered and at times rendered non-existent by substantial periods of time when Plaintiff was house-bound by said disabilities, thus precluding Plaintiff from effectively conducting said due diligence .

34.   Plaintiff, despite his disabilities, limited capacity, and periods of incapacity did in fact make genuine efforts to ascertain the names of the individual Defendants, that his diminished capacity allowed, in order to identify the individual Defendants by name and/or shield number prior to the running of the statute of limitations.

35.   On or about mid-April 2013 Plaintiff interviewed, by telephone and in person, with Mr. Eric Rothstein, Esq., an attorney licensed in New York State, of 222 Broadway New York, NY for the purpose of retaining him as counsel for the instant action.

36.   During this interview Plaintiff asked Mr. Rothstein how the identities of the Defendants are determined in a lawsuit when the names of the Defendants are unknown. Mr. Rothstein advised Plaintiff that the presiding Judge or Magistrate would generally order (pursuant to <u>Valentin v. Dinkins</u>) the Defendants and/or Counsel for the Defendants to provide the names of the Defendants to the Plaintiff.

37.    Mr. Rothstein also informed Plaintiff that a Freedom of Information Law (FOIL) request could be filed in order to obtain the names of the Defendants but, he continued, more often than not FOIL requests for the names of employees of the Defendant City, especially Police and Fire Department employees routinely go unanswered or if answered they are denied on grounds of privilege and/or security.

38.    Mr. Rothstein ultimately declined to represent Plaintiff in the instant action but based on the information he provided to him, Plaintiff did, on or about end-April 2012, and despite being counseled that to do so could be futile, file a FOIL request with the NYPD, One Police Plaza via U.S. Mail asking for the names of the individual Police Officer Defendants. Plaintiff did not receive any reply from NYPD for approximately two (2) months (nor did Plaintiff ever receive a reply).

39.    On or about early-June Plaintiff did go, in person, to NYPD H.Q. One Police Plaza New York, NY (1PP) to inquire about his FOIL request and to further make inquires about obtaining the names of the individual Defendant Police Officers.

40.    The Police Officer that Plaintiff spoke to at 1PP told Plaintiff that the NYPD does not provide names of its employees to civilians, with or without a FOIL request, for security reasons and that the only way Plaintiff could obtain said names was through a COURT ORDER, which was consistent with what Mr. Rothstein told Plaintiff.

41.    Plaintiff further inquired of said Police officer at 1PP if a court order was required to obtain the names of NYC Fire Department employees, as he was told was necessary for Police Officers, and the Police officer told Plaintiff that CITY would *not provide the name of any employee* of Defendant CITY *unless so ordered by the Court.*

42.    On or about July 2013 Plaintiff went in person to the NYPD 1st Precinct House, Ericson Place New York, NY.

43.    Despite his previous unsuccessful attempts to ascertain the identities of the Defendants, Plaintiff nonetheless, entered the 1st Precinct and explained to a Police Officer that that he was seeking the names and shield numbers of the Police Officer Defendants that arrested him and the Police Officer Defendants that were in any way involved in said arrest of December 05, 2011.

44.    The Sergeant on duty at the time interceded on behalf of the aforementioned Police Officer and told Plaintiff that the NYPD did not furnish such information; became agitated by Plaintiff's request and angrily ordered Plaintiff to remove himself from, "His Precinct House before we lock you up again!" As such Plaintiff was again unsuccessful in his attempts to ascertain the names and shield numbers of the Police Officer Defendants.

45.    Plaintiff made further efforts to obtain the names and shield numbers of the Police Officer Defendants and the other individual Defendants when he contacted several other attorneys, by telephone and email, for the purpose of retaining them as counsel in the instant action. Plaintiff, during conversations with said attorneys, again asked the attorneys how he could obtain the names and/or shield numbers of the Defendants. All of these other attorneys told plaintiff that FOIL requests most likely would not be an effective method (although Plaintiff did file a FOIL request as aforementioned) in obtaining the names and the shield numbers of the Defendants and the identities of the other individual Defendants that were employees, and/or agents of Defendant CITY and that based on their experience Plaintiff would have to rely on an order of the Court

directing Defendants to provide the names and shield numbers of the uniformed Defendants and for the names of the civilian Defendants that were employees of Defendant CITY.

46.     As such, Plaintiff did in fact make genuine efforts (as was allowed by his diminished capacity) towards obtaining the names and shield numbers of the uniformed Defendants and the names of the civilian Defendants, but despite what information he was able to garner from his efforts, and due to his limited physical and mental capacities, Plaintiff was unsuccessful.

47.     Accordingly Plaintiff's Amended Complaint and Second Amended Complaint, and this Third Amended Complaint relate back to Plaintiff's original timely filed complaint under CPLR § 1024 by virtue of satisfying all the relation back requirements under CPLR § 1024; INCLUDING the due diligence requirement OR, in the alternative, Plaintiff's due diligence requirements are excused due to his diminished capacity and disabilities as described herein.


## RELATION BACK; UNITED INTEREST

48.     The "John Doe" Defendants in the original, timely filed complaint have a shared, united interest with the named Defendant CITY as they were employees of Defendant City and/or indemnified by Defendant CITY.

49.   Plaintiff's amended complaint(s) relate back to the original, timely filed complaint by virtue of this united interest and either the satisfied or excused requirements of due diligence as described herein.
[Gotlieb v. County of Nassau, 1983; 92 A.D. 2d 858; 460 N.Y.S. 2d 76 (2d Dep't) where timely service was on named employer, unity of interest toll kept action alive against "John Doe" employees who were served with both original and amended summons and complaint when their names were ascertained].


## EXHAUSTION OF ADMINISTRATIVE REMEDIES

50.  Defendants are estopped from asserting the affirmative defense of failure to exhaust because they took steps to keep Plaintiff from filing a grievance when they made the grievance process unavailable to him by placing him in general population in upper tier cells where he was kept in de facto keep-lock isolation by nature of his physical and mental incapacitation due to the traumatic, serious injuries and substantial pain he sustained at the hands of the Defendants, or in the alternative:

51.     The events that occurred while Plaintiff was in the custody of the NYPD, before Plaintiff was arraigned and remanded to the custody of the NYCDOC, and the related causes of action are not subject to the Prisoner's Litigation Reform Act (PLRA) and are not barred by any alleged failure to exhaust administrative remedies.

52.     Moreover during the period of time plaintiff was in the custody of the NYPD there were no available means for Plaintiff to exhaust any administrative remedies because the NYPD does not maintain an Inmate Grievance and Request Program (IGRP) moreover Plaintiff's substantially diminished physical and mental

capacities precluded Plaintiff from taking any steps to exhaust administrative remedies even if any were available to him.

53.    During the entire period of time that Plaintiff was ultimately in the custody of the NYCDOC Plaintiff had real and legitimate fears of reprisal from the Defendants and/or other NYCDOC employees, should he submit written grievances, and these fears are based on the facts that Plaintiff had already been very seriously injured by Defendants, and Plaintiff had already been denied any protective measures by the Defendants' failure to intervene while Plaintiff was being assaulted by other inmates/prisoners in the holding pens, and that Plaintiff was threatened by Defendants with the prospect of Defendants, "Losing his paperwork" and "Losing him in the system" should he continue to complain about his pain and continue to request to be returned to the hospital as described in the factual allegations herein.

54.    As such, it was made clear to Plaintiff by the Defendants, and other employees of Defendant CITY, that pursuing the exhaustion of administrative remedies would not only be a "dead-end" but would plausibly result in reprisals from Defendants and/or other of Defendant CITY's employees, servants, and/or agents that would further put in danger Plaintiff's well being; even his life, as it is a commonly, and well known fact that illegal beatings and wrongful deaths have occurred many times as a direct result of the constitutional torts committed against prisoners by employees of the NYCDOC and in particular – Rikers Island.

55.    The Courts have held that, "...special circumstances may excuse a prisoner's failure to exhaust." [See: Berry v. Kerik 366 F. 3d 85, 87-88 (2d. Circ. 2004)].

56.    Plaintiff's serious injuries and substantial pain, and his resultant incapacitation constitute "special circumstances" that justify any alleged failure of Plaintiff to utilize the prison grievance system. [See: Hemphill v. City of New York 380 F. 3d. 680 (2d. Circ. 2004)].


57.    Moreover, notwithstanding Plaintiff's legitimate fears of reprisal(s) by Defendants and/or other NYCDOC employees due to intimidation, the grievance process was made unavailable to Plaintiff by nature of the very serious injuries visited upon Plaintiff by the Defendants as alleged and described herein.

58.    Accordingly, when prison administrators thwart inmates from taking advantage of a grievance process through machinations, misrepresentation, or intimidation a prisoner's failure to exhaust may be excused.

59.    Plaintiff was wrongfully housed in General population (GP) in cells that were located on upper tiers of the jail, whereby due to Plaintiff's very serious injuries and substantial pain, he was unable to leave his cell and was held in de facto keep-lock isolation thus preventing him from access to any grievance process rendering any grievance process unavailable to plaintiff.

60.    Even if Plaintiff had pen and paper in his cell – which he did not – Plaintiff was so wracked with excruciating pain from his very serious injuries that he was incapable of thinking straight – let alone write out a grievance. Plaintiff's only thinking, understandably, was to merely survive moment by moment.

## FACTUAL ALLEGATIONS

61.    Each of, and all of, the acts of the Defendants alleged herein were done by said Defendants while acting under color of law and within the scope of their employment, by or through as an agent, of the City of New York.

62.  On December 5, 2011 at approximately 05:30 PM in front of 160 Broadway New York, NY Plaintiff had just dismounted his bicycle in order to negotiate the heavy holiday foot traffic of the sidewalk and was walking his bicycle Northbound on the East side of the street.

63. Plaintiff was wearing a bicycle helmet with a headlamp attached to the top of the helmet and the headlamp was on in the flash/strobe mode for safety.

64. Plaintiff was solicited for money by two panhandlers. Plaintiff, curious about the recent 'Occupy Wall Street" (OWS) protests then parked his bicycle and engaged in a brief conversation with the two panhandlers.

65. Plaintiff inquired of the two panhandlers if they were part of the OWS protests when the panhandlers became aggressive and threatening and told Plaintiff they were going to beat him up at which point a bystander called 911.

66. Before the arrival of any police on the scene Plaintiff disengaged himself from the two panhandlers and turned to resume walking his bicycle up the street.

67. Plaintiff was making no effort to flee the scene nor was he in any way attempting to be elusive – in fact Plaintiff was wearing a flashing light on his head.

68. Plaintiff did not believe he was being sought or pursued because the two panhandlers and he parted in opposite directions.

69. As Plaintiff approached his parked bicycle to resume walking up the street with his back to the scene of said encounter Defendant AMAN, without warning and without identifying himself as a police officer, tackled Plaintiff from behind causing Plaintiff to fall face-down onto the sidewalk.

70. Immediately thereafter, as Plaintiff lay dazed and semi-conscious, splayed, prone face-down, and completely incapacitated, Defendant AMAN with intent to cause serious injury and substantial pain did with great and excessive force and using the full weight of his body, drive his knee down and smash it into Plaintiff's lower back just above Plaintiff's buttocks causing Plaintiff's pelvis to be fractured in four (4) separate places and also to cause serious injury to, among other things, Plaintiff's lower vertebrae, spinal disc tissue, nerve tissue, and other serious injuries and incalculable pain.

71. The shock and pain of the serious injuries to Plaintiff caused by the reckless, wanton acts of Defendant AMAN additionally caused Plaintiff to lose control of his bladder and urinate on himself.

72. Plaintiff engaged in no resistance to Defendant AMAN at any time and in fact Plaintiff was not charged with resisting arrest.

73. Moreover, Defendant AMAN's , unlawful, wrongful, wanton, and reckless, actions, in addition to the immediate serious injuries, pain, and suffering aforementioned, did further cause Plaintiff permanent, life-changing physical, mental, psychological, and emotional injuries, pain, and suffering to Plaintiff in perpetuity as described and enumerated in this complaint.

74. The Courts have held, pertaining to the malicious intent standard in Federal Claims regarding the use of force, that the Assault and Battery Standard by State Law ("is equal to 4th amendment standard") which focuses on what is "reasonable" and "necessary" rather than on what the officer intended appears similar to 4th amendment "objective reasonableness" standard applied to uses of force against arrestees.

75. The Courts have also held that [the] "severity of injury is not determinative of constitutional violation but is probative of the amount of force used". [Boyd v. Clark 783 F 2d 1002, 1006 (11th Circ. 1986)].

76. The Courts have also held that "…the severity of injury "tends to prove degree of force and the existence of its justification".

77. The acts committed by Defendant AMAN against Plaintiff meet the elements of the crime of Assault in the Second Degree as set forth by the Penal Law of the State of New York in PL § 120.05.

78. Defendant AMAN committed Assault in the Second Degree against Plaintiff when he, after Plaintiff had already been knocked down to the sidewalk and was already in an incapacitated state; offering NO resistance, and even incapable of offering any resistance, did cause serious injury to Plaintiff whereby such serious injury caused, "…protracted impairment of health or protracted loss or impairment of the function of any bodily organ." [see NYS PL § 120.05].

79. The felonious act of Assault in the Second Degree committed by Defendant AMAN against Plaintiff and the use of excessive force against Plaintiff was not reasonable, was not necessary, and fails any "objective reasonableness" standard that is applied by the Courts to uses of force against arrestees and is entirely absent of justification because, at the time of the aforesaid actions of Defendant AMAN, Plaintiff was already incapacitated, offered no resistance, and was incapable of offering resistance.

80. The use of excessive force by Defendant AMAN against Plaintiff, THOMAS E. MILES, as described herein violated Plaintiff's Constitutional Rights, Immunities, and Privileges, to be free from excessive use of force as guaranteed by the 4th Amendment of the U.S. Constitution.

81. Accordingly, the aforementioned factual allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his FIRST CAUSE OF ACTION: USE OF EXCESSIVE FORCE (Count 1); 4th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

82. When Defendant AMAN used excessive force against Plaintiff as described herein he did so with the intent to cause injury, pain, and suffering to Plaintiff and did so with malice aforethought such that Defendant AMAN's subjective state of mind was that he knew full well and was aware that his actions of driving his knee down into Plaintiff's back, powered by, and with the driving force of the full weight of his body, while Plaintiff was already incapacitated; lying prone, face-down on the sidewalk, offering no resistance, and incapable of offering resistance, would cause objectively serious injury to Plaintiff and would cause objectively substantial pain to Plaintiff.

83. Defendant AMAN, having the subjective state of mind as described herein, with the full knowledge that his actions would cause objectively serious injury to Plaintiff and would cause objectively substantial pain to Plaintiff did willfully ignore these facts and did continue to commit his wrongful and unlawful acts against Plaintiff with deliberate indifference and recklessly and wantonly did cause objectively serious injury and objectively substantial pain to Plaintiff.

84. As a Police Officer Defendant AMAN has no authority or jurisdiction in the imposition of punishment on others, yet not only did Defendant AMAN wrongfully and unlawfully impose punishment on Plaintiff, Defendant AMAN's actions far surpassed the wrongful and unlawful imposition of punishment, by nature of the recklessness, callousness, and wantonness of his actions, that he wrongfully and unlawfully inflicted *cruel and unusual* punishment upon Plaintiff.

85. The cruel and unusual punishment inflicted upon Plaintiff by Defendant AMAN was so reckless, wanton, callous, heinous, and reprehensible as to be unmoored to any modicum of decency, civility, and morality, that it is shocking to the conscience of any reasonable person.

86. The aforementioned acts committed by Defendant AMAN against Plaintiff, whereby Defendant AMAN inflicted cruel and unusual punishment upon Plaintiff, violated Plaintiff's Constitutional Rights, Immunities, and Privileges to be free from cruel and unusual punishment as guaranteed and protected by the Due Process Clause of the 14th Amendment of the U.S. Constitution.

87. Accordingly the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his SECOND CAUSE OF ACTION: VIOLATION OF DUE PROCESS (Count 1); Cruel and Unusual Punishment under the14[th] Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

88. Defendant CITY maintains, tacitly approves, and endorses customs, usages, policies, practices, and procedures whereby its employee Police Officers, Correction Officers, Emergency Medical Technicians (EMT's), Medical Doctors, and Physician's Assistants engage in activity that often and many times violates and deprives the constitutional rights of others by, but not limited to, the use of excessive force, violation of rights of due process, the infliction of cruel and unusual punishment, failing to provide equal protection, failure to intervene in the violation of the constitutional rights of others, failure to provide adequate medical care, and failure in their duty of care to their charges and these customs, usages, policies, practices, and procedures were the proximate cause of and the moving force behind the deprivations and violations of the constitutional rights of Plaintiff, THOMAS E. MILES.

89. Moreover Defendant CITY maintains, tacitly approves, and endorses customs, usages, policies, practices, and procedures of inadequate recruiting, screening, hiring, retaining, training, and supervising its employees and these customs, usages, policies, practices, and procedures were the proximate cause of and the moving force behind the deprivations and violations of the constitutional rights of Plaintiff, THOMAS E. MILES.

90. But for the aforesaid customs, usages, policies, practices, and procedures Defendant CITY knew or should have known, in the exercise of reasonable care, the propensities of the individual Defendants to engage in the wrongful, unlawful, and unconstitutional acts and conduct alleged in this complaint.

91. But for the aforesaid customs, usages, policies, practices, and procedures Defendant CITY knew or should have known, in the exercise of reasonable care, that the individual Defendants lacked the maturity, disposition, and temperament necessary to properly carry out their duties.

92.    Defendant CITY, as a result of the aforementioned customs, usages, policies, practices, and procedures engaged in the inadequate recruiting, screening, hiring, retaining, training, and supervising of the individual Defendants that conducted and participated in the violation of the constitutional rights of Plaintiff, THOMAS E. MILES.

93. That Defendant CITY maintains, tacitly approves, and endorses the aforementioned customs, usages, policies, practices, and procedures and that they are longstanding, prevalent, and widespread and that the commission of acts by employees of Defendant CITY that violate the constitutional rights of others as a direct result said customs, usages, policies, practices, and procedures, are widespread is evidenced and evinced by the fact that the individual Defendants were employed in numerous, varied, and widespread departments, agencies, and other subsidiary entities of Defendant CITY that span and encompass the New York City Police Department, the New York City Fire Department, the New York City Correction Department, the New York City Health and Hospitals Corporation, and the New York City Department of Health and Mental Hygiene showing that these customs, usages, policies, practices, and procedures are not endemic to any single department, agency, or other subsidy entity of Defendant CITY but are in fact widespread.

94. Further, that Defendant CITY maintains, tacitly approves, and endorses the aforementioned customs, usages, policies, practices, and procedures and that they are longstanding, prevalent, and widespread and that unlawful, unconstitutional conduct of, and acts committed by, employees of Defendant CITY that conform to, are in adherence to, are consistent with, and in accordance with said customs, usages, policies, practices, and procedures that violate the constitutional rights of others are widespread is evidenced and evinced by, but not limited to, such well and publicly known cases as the Abner Louima case, the Amadou Diallo case, the Sean Bell case, and the Eric Garner case, and numerous other lesser known cases of civil rights violations by Defendant CITY and its employees that are legion.

95. These cases and others have occurred over many years, even decades, supporting and showing the fact that the aforementioned customs, usages, policies, practices, and procedures, and the attendant unconstitutional conduct of employees of Defendant CITY, are longstanding, prevalent, and widespread.

96. The Courts have held that, "…a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law."
[See: City of St. Louis v. Praprotnic 485 U.S. 112, 127, 130 (1985)].

97. Moreover, in conjunction with the aforementioned customs, usages, policies, practices, and procedures of Defendant City, there is a culture of protecting and/or concealing the malfeasance of said employees, including the individual Defendants, and that they engage in widespread practices of falsification.

98. A well known example of such widespread protection and concealment of malfeasance and practices of falsification that has been widely reported by various news media outlets is the massive "ticket fixing" scandal of the NYPD that investigators originally discovered in Bronx County and was further discovered to encompass many NYPD precincts through out all five boroughs of the City of New York.

99. Another well known example of such widespread protection and concealment of malfeasance and practices of falsification that has been widely reported by various news media outlets is the case in which NYPD Officers, and ranking NYPD Officers engaged in the unlawful issue of concealed-carry hand gun permits to individuals and special interest groups in Williamsburg and Borough Park in exchange for cash bribes, vacations, junkets, and other gifts-in-kind and it was discovered by investigators that this criminal behavior reached up to high echelons of the NYPD's ranking officers.

100.    A prime example of the protection and concealment of malfeasance and practices of falsification and that is consistent with, and in adherence to, the aforementioned customs, usages, policies, practices, and procedures of Defendant City that violate the constitutional rights of others, and is particular to this complaint,

is when Defendant ACERRO did falsify the official government document titled, "Omniform System Arrest Report" number M11705387 (annexed hereto and labeled "Exhibit 1").

101.     On page 2 of said document, in the area pertaining to the use of force in the arrest of Plaintiff, where the document reads:  "Force Used ___"  Defendant ACERRO typed the word, "no".

102.     This was a deliberate falsification and not an inadvertent error that may have occurred by possibly placing a check mark in the wrong box but in fact Defendant ACERRO, with the intent to falsify, and for the purpose of concealing the constitutional violation of Plaintiff, THOMAS E. MILES, that was committed by Defendant AMAN's use of excessive force against Plaintiff, did affirmatively type the word, "no" on said document asserting, falsely, that no force was used in the arrest of Plaintiff when , in fact, not only was force used but excessive force was used to the extent that Plaintiff was seriously injured and required an ambulance to transport him to BELLEVUE emergency room.

103.     Defendant ACERRO falsified said document with the full knowledge that force - actually excessive force – was used in the arrest of Plaintiff and that she knew that force was used is shown and supported by the fact that she and her patrol partner Defendant BUTT were on the scene and witnessed Plaintiff's inability to stand or walk and she was clearly and directly told by Plaintiff that he was seriously injured and was in substantial pain as a result of the excessive force used against him by Defendant AMAN and, additionally, she and Defendant BUTT accompanied the ambulance to BELLEVUE and maintained custody of Plaintiff at BELLEVUE and through out the entire arrest and booking process.

104.     Defendant ACERRO's assertion on said official government document that no force was used in the arrest of Plaintiff is preposterous on its face.

105.     Defendants ACERRO and BUTT, acting in concert with NYPD Sgt. Michael Sena (whom is listed on said document as the "Supervisor Approving" said document) all having the full knowledge that force – actually excessive force - was used in the arrest of Plaintiff, conspired to falsify said document with the intent and for the purpose of concealing the use of force –actually excessive force – by Defendant AMAN against Plaintiff, THOMAS E. MILES.

106.   It is also worthy of note, in light of Defendant ACERRO's blatant falsification of the the aforementioned official government document and her conspiracy to falsify said document, that the address for process of service for this complaint for Defendant ACERRO  is the NYPD Legal Bureau One Police Plaza New York, NY which is the same address that Plaintiff filed his FOIL request that was never answered and where, when Plaintiff went in person to inquire about the FOIL request and the identities of the Defendants, he was wrongly told by an NYPD officer that Defendant CITY  and/or their NYPD does NOT provide the names of its police officers nor does Defendant CITY provide the names of ANY of its employees through FOIL requests and that the names of police officers or any employee of Defnedant CITY can only be obtained by an order of the Court.

107.   The failure to answer Plaintiff's FOIL request and the willful obstruction of Plaintiff's genuine efforts to obtain the names and badge numbers of the uniformed Defendants and the names of the civilian Defendants, that was carried out by the NYPD officer at 1PP and by the NYPD Officer and the NYPD Sergeant at the NYPD 1st Precinct is consistent with and in adherence to the widespread and pervasive conduct of many of Defendant CITY's employees wherby they thwart and obstruct the genuine efforts of others, including even the Courts, to obtain the identities of employees of Defendant CITY and/or other discovery material.

[See: Henderson-Jones v. City of New York (2011) 87 A.D.3d 498 (1st Dept)
Whereby members of the NYPD and defense counsel for Defendant CITY acted
willfully, contumaciously, and in bad faith when they, in bold defiance
of the Court's order(s) to produce discovery regarding the names and
badge numbers of the officers involved, engaged in such paltry, cursory,
and perfuntory efforts to produce said names and discovery that the
Court deemed the Defendants to be "obstreperous" in their defense and
was inclined to take the drastic action of striking the Defendant's
answer.].

108.   There exists a culture within the various departments, and
other subsidary entities of Defendant CITY whereby employees of Defen-
dant CITY engage in widespread customs, usages, policies, practices,
and procedures of what are colloquially known as, "Go Along to Get
Along" and "Passing the Buck" when duties of care are owed and the
constitutional rights of others are at stake.

109.   Regarding the, "Go Along to Get Along" custom, usage, policy,
practice, and procedure many employees of Defendant CITY fail, by omis-
sion to intervene, fail to report; falsify reports by omission and/or
fabrication, and give false testimony, with regard to the failure to
provide owed duties of care and the violation of constitutional rights
of arrestees, pre-trial detainees, and sentenced prisoners by their
fellow employees whereby many of these employees abide by a "Code of
Silence" and/or a code of loyalty - albeit misplaced loyalty - that is
paramount to, and supercedes, their sworn duty to abide by, and uphold
the law and that when they have full knowledge of and/or witness acts
of their fellow employees that violate the constitutional rights of
others they ignore, tolerate and/or approve either overtly or tacitly
these acts of their fellow employees and with deliberate indifference
they fail to intervene in the violation of the constitutional rights
of others that are committed by their fellow employees and as such they
become complicit in the underlying constitutional violations of others
and their failure to intervene is, in and of itself, a violation of
the constitutional rights of others.

110.   This culture and its attendant "Go Along to Get Along" custom,
usage, policy, practice,and procedure exists and is widespread because
also within this culture there exists an "unwritten law" whereby if an
employee of Defendant CITY does not conform to the "Go Along to Get
Along" custom, usage, policy, practice,and procedure they are subject
to being ostracized by their fellow employees and even their super-
visors, and to being labeled dis-loyal or in the vernacular, being cal-
led a "rat" and are subject to reprisal and retaliation by, inter alia,
being assigned the least favorable posts or assignments available,
being passed over for advancement or promotion, and even subject to
unnecessary, even life-threatening, danger when back-up or assistance
is sought but not provided.

111.    These customs, usages, policies, practices, and procedures are powerful and effective disincentives that curtail, supress, and even quash any efforts or attempts any employee of Defendant CITY may wish to make to provide owed duties of care, and to intervene in the violation of the constitutional rights of others when their fellow employees commit such acts.

112.    Regarding the custom, usage, policy, practice, and procedure of "Passing the Buck" many employees of Defendant CITY fail to provide owed duties of care that result in the violation of the constitutional fights of others, especially those in the custody of law enforcement, and they do so with the full knowledge and awareness that their failure will be the proximate cause of and will result in the constitutional rights of others being violated and despite such knowledge and awareness they act with deliberate indifference when they fail to provide owed duties of care and when they violate the constitutional rights of others through acts and/or omissions.

113.    This failure to provide owed duties of care that result in the violation of the constitutional rights of others is a result of the culture that exists by nature of the customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY because these employees of Defendant CITY fear the appearance (to their fellow employees and supervisors) of being "too soft" or "too easy" or coddling in their actions as custodians of others, especially those others that are in the custody of law enforcement, because such actions or appearance of such actions many times, regularly, and customarily result in the aforementioned reprisals and retaliations from their fellow employees and supervisors.

114.    Another reason many employees of Defendant CITY commonly fail to provide owed duties of care to those in the custody of law enforcement is because they simply could not be bothered to. They would rather "Pass the Buck" or even sadistically, willfully fail to provide owed duties of care and act with deliberate indifference when they violate the constitutional rights of their charges and these employees exist, are employed and retained by Defendant CITY as a direct result of the customs, usages, policies, practices, and procedures of inadequate recruiting, screening, hiring, retaining, training, and supervising that is maintained, tacitly approved, and endorsed by Defendant CITY.

115.    These employees of Defendant CITY commonly fail to provide owed duties of care to those in the custody of law enforcement because they know that their charge is, "In the System" and in order to reduce or eliminate as much involvement with their charges they act with deliberate indifference and willfully fail to provide owed duties of care that results in the violation of the constitutional rights of their charges and this willful failure is done with the mindset of, "Its Not My Job" or "Its Not My Problem" and they pass their charge on (Passing the Buck) to the next employee, department, or other subsidy entity of Defendant CITY thus (wrongfully) "washing their hands" of their owed duties of care in false justification of their abject failure to provide owed duties of care that results in the constitutional violations of their charges.

116.     There exists a culture within the ranks of employees of Defen-
dant CITY in which said employees conform to, adhere to, and comply with
customs, usages, policies, practices, and procedures whereby they treat
persons in the custody of law enforcement as second class citizens or
even as, "untouchables" of some foreign social caste system  that are
somehow disqualified from or devoid of their constitutional rights by
virtue of their status of arrestee, pre-trial detainee, or sentenced
prisoner.

117.     These employees maintain the subjective state of mind that
arrestees and pre-trial detainees, although presumed innocent by law,
are in fact NOT innocent and the existence of this mindset is shown by
Plaintiff's ordeal complained of herein whereby Plaintiff's complaints
of pain, his requests for adequate medical care, and his requests to be
returned to the hospital were were answered many times by many differ-
ent employees of Defenfant CITY with the often repeated "mantra" of
said employees: "If you don't like it - stop coming to jail," clearly
showing that said employees had the mindset that they had no obligation
to provide owed duties of care, even for the basic necessities of life,
to their charges and to Plaintiff by virtue of their and his status of
arrestee and/or pre-trial detainee.

118.     "New York Magazine" published an investigative news report - an
exposé - of Rikers Island and the New YOrk City Department of Correction
in their June 28, 2015 issue that is annexed hereto and labeled,
"EXHIBIT 2".

119.     On page 1 of said article the author points out systemic pro-
blems with Rikers Island have existed since its inception as a City Jail
that are so pernicious that they exist to this day where the article
reads in relevant part (and is high-lighted on EXHIBIT 2) that:

120.  "The first jail on the island opened in 1935, meant to supplement
and eventually replace the un-improvable disaster that was the Blackwell's
Island (now Roosevelt Island) jail, which "Time" [Magazine] had called
in an exposé, the "world's worst". But Rikers Island never had a pris-
tine moment, even at the start. Before the facility opened, inspectors
warned of health hazards occasioned by, among other things, "dump fires",
and the problems that had plagued Blackwell's - drug use, corrupt cor-
rection officers, violence, squalor, gang consolidation - moved upriver
[to Rikers] almost immediately and have stubbornly stayed ever since".

121.     That there exists widespread malfeasance engaged in by employees
of Defendant CITY through its Department of Correction and this mal-
feasance results in the violation and deprivation of the constitutional
rights of those in custody of Defendant CITY and that this malfeasance
is so longstanding and widespread is elucidated in said article,
EXHIBIT 2, that also supports and shows the fact that Defendant CITY
maintained, tacitly approved, and endorsed customs, usages, policies,
practices, and procedures that violated the constitutional rights of
others is elucidated by said article where it reads in relevant part
on pages 1 and 2 (and high-lighted on EXHIBIT 2) that:

122.     "Gangs openly controll certain dorms; correction officers are
in constant battle - often literal - with their charges, but some of
them form transactional relationships with them too, whether for sex,

or drugs, or cigarettes...It has been the deaths that have lately moved the gaze of New Yorkers back to Rikers where we have been troubled to read stories like the one about a schizophrenic, diabetic inmate named Bradley Ballard who was locked alone in his cell for six days without medication, insulin, food or running water; officers and health workers remarked on the smell coming from his cell, but no one got up to help him until he went into cardiac arrest, covered in his own feces and with a rubber band around his genitals that caused sepsis to set in."

123.    "Or the one [story] about Victor Woods who went into a violent seizure while a guard sat watching him and drinking a cup of coffee."

124.    "Or just a few weeks ago the news about a 22-year-old Kalief Browder, accused of stealing a backpack; his three years on Rikers Island without a trial had been chronicled in the "New Yorker" [magazine]. He hanged himself after he got out, as he'd tried to do while in jail".

125.    Further: "There were ten deaths last year alone, and stabbings and slashings have doubled since 2010. The "New York Times" [newspaper] has run an investigative series on the jail that has, among other things, exposed widespread abuse and violence by correction officers toward the mentally ill (whom there are many in jail.")

126.    Further on page 6 of said article, EXHIBIT 2, the article reads in relevant part (and high-lighted on EXHIBIT 2) that :
"Nothing in criminal law in New York says if you're on trial you can't have clean clothes. But people may go ten, 11 months without access to laundry, outside the sink and a bar of soap. You'll see people covered in their own filth. Last week an inmate told me that he is supposed to receive twice-a-day medication sometime between 6:30 and eight in the morning and once in the evening. but the officer steps inside the room andcalls his name and says its time for meds, but not loudly at all, and doesn't make an attempt to actually contact the person. The dorm is so loud. And he doesn't hear his name or that its time (for his meds). And the officers don't follow up. If they don't get a response, they walk away.

127.    Also, further, on page 9 of said article, EXHIBIT 2, in the case of Victor Woods age 43 who died of internal bleeding in October 2014 while awaiting trial for drug possession the article reads in relevant part (and high-lighted on EXHIBIT 2) that:

128.    "Victor and I were together for about 20 years. A week after Victor had been arrested, a Chaplin called me and asked if I knew Victor Woods. He asked if I knew Victor was at Rikers. He said he had a seizure this morning and passed away...I learned more once Victor's mom got us a lawyer and we started investigating. Nobody had told me anything. Eventually we got the autopsy which showed he'd had a seizure and ulcers. It was through the autopsy that I found out what happened. We later learned that he had serious ulcers, and that they had started bleeding, so he bled to death internally. We learned that other inmates had pleaded with officers to get him medical help but they didn't help him."

129.  The aforementioned article also elucidates the widespread failure to provide adequate medical care by Corizon whereby Mayor de Blasio decided not to renew its contract with Corizon; that the NYDOC is rife with corruption, with Union Boss of the Correction Officers Benevolent Association Norman Seabrook under investigation by U.S. Attorney Preet Bharara ( Union Boss, Norman Seabrook has subsequently been arrested and charged with, among other things, the taking of bribes) , and that Defendant CITY recently settled a lawsuit concerning excessive use of force against inmates where said article reads in relevant part (and high-lighted on EXHIBIT 2) that:

130.  "The Mayor has also decided not to renew the jail's contract with Corizon, its widely criticized medical provider. Meanwhile, Norman Seabrook, the powerful union boss of the Correction Officers Benevolent Association, is the subject of a corruption investigation by U.S. Attorney Preet Bharara and the City recently settled a long-running class-action lawsuit brought by the Legal Aid Society and Bharara's office concerning excessive use of force against inmates."

131.  That said lawsuit was a class-action suit shows that the malfeasance of Defendant CITY's employees was so widespread that it constituted a custom, usage, policy, practice, and procedure maintained, tacitly approved, and endorsed by Defendant CITY whereby many of its employees engage in action that violates and/or deprives the constitutional rights of a whole class of others and that Defendant CITY failed to take corrective action and as such acted with deliberate indifference to the constitutional rights of others.

132.  That said lawsuit was a class-action suit shows that the malfeasance of Defendant CITY's employees was so widespread that it constituted a custom, usage, policy, practice, and procedure maintained, tacitly approved, and endorsed by Defendant CITY of inadequate recruiting, screening, hiring, retaining, training, and supervising of its employees whereby as a result of said customs, usages, policies, practices, and procedures its employees violated the constitutional rights of a whole class of others and that Defendant CITY failed to take corrective action and as such acted with deliberate indifference to the constitutional rights of others.

133.  In the aforementioned article, EXHIBIT 2, regarding Defendant CITY's customs, usages, policies, practices, and procedures of inadequate recruiting, screening, hiring, retaining, training, and supervising of its employees, the new, incoming commissioner of NYDOC, on pages 12 and 13, concedes the existence and the need for change of the customs, usages, policies, practices, and procedures of inadequate recruiting, screening, hiring, retaining, training, and supervising of its employees where the article reads in relevant part (and high-lighted on EXHIBIT 2) that:

134.   [Question]: "You've done a lot of shaking up of the departments leadership. Has there been a lot of turnover?"

135.   [Answer]: "Yes. Probably 100 per cent. You couldn't take any part of this organization and say, "Boy that's running really well". Somebody goes to the NYPD and fails, and they come to us [NYDOC] and we hire them. We'll change that. You can't make it in the NYPD, you can't make it in theNew York City Correction."

136.   That Defendant CITY was aware of and had notice of the afore-mentioned customs, usages, policies, practices, and procedures that violated and deprived the constitutional rightsof others including Plaintiff that were the proximate cause of the violations and depriva-tions of Plaintiff's constitutional rights, and that caused the indi-vidual Defendants to violate Plaintiff's constitutional rights, and that were the moving force behind the violation of Plaintiff's con-stitutional rights, and that despite such notice and awareness of said customs, usages, policies, practices, and procedures Defendant CITY acted with deliberate to the constitutional rights of Plaintiff when Defendant CITY failed to take corrective action is evidenced and evinced and shown by the cases and examples cited herein and by the factual al-legations set forth herein.

137.   When Defendant AMAN used excessive force against Plaintiff in violation of Plaintiff's constitutional rights, Defendant AMAN's actions conformed to, were in adherence to, were consistent with, and in accor-dance with the aforementioned customs, usages, policies, practices and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

138.   Despite such notice and awareness, alleged herein, of the afore-mentioned customs, usages, policies, practices, and procedures Defendant CITY failed to take corrective action and acted with deliberate indif-ference to Plaintiff's constitutional rights to be free from the use of excessive force.

139.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES bases his THIRD CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 1) under Monell; Title 42 U.S.C. § 1983.

140.   When Defendant AMAN inflicted cruel and unusual punishment on Plaintiff in violation of Plaintiff's constitutional rights, Defendant AMAN's actions conformed to, were in adherence to, were consistent with, and in accordance with the aforementioned customs,usages, pol-icies, practices, and procedures maintained, tacitly approved, and en-dorsed by Defendant CITY.

141.   Despite such notice and awareness, alleged herein, of the afore-mentioned customs, usages, policies, practices, and procedures, Defen-dant CITY failed to take corrective action and acted with deliberate indifference to Plaintiff's constitutional rights to be free from cruel and unusual punishment.

142.    Accordingly, the aforementioned allegations, alleged herein, are the grounds on which Plaintiff, THOMAS E. MILES, bases his FOURTH CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 2) under Monell; Title 42 U.S.C. § 1983.

143.    When Defendant ACERRO falsified the official government document "Omniform System Arrest Report" number M11705387 her action violated Plaintiff's constitutional rights to Due Process.

144.    Accordingly, the aforementioned allegations, alleged herein, are the grounds on which Plaintiff, THOMAS E. MILES, bases his FIFTH CAUSE OF ACTION: VIOLATION OF DUE PROCESS (Count 2); 14th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

145.    When Defendant ACERRO conspired to falsify said official government document her actions violated Plaintiff's constitutional rights to Due Process.

146.    Accordingly, the aforementioned allegations, alleged herein, are the grounds on which Plaintiff, THOMAS E. MILES, bases his SIXTH CAUSE OF ACTION: VIOLATION OF DUE PROCESS (Count 3); 14th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

147.    When Defendant BUTT conspired to falsify said official government document his actions violated Plaintiff's constitutional rights to Due Process.

148.    Accordingly, the aforementioned allegations, alleged herein, are the grounds on which Plaintiff, THOMAS E. MILES, bases his SEVENTH CAUSE OF ACTION: VIOLATION OF DUE PROCESS (Count 4); 14th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

149.    When NYPD Sgt. Michael Sena conspired to falsify said official government document his actions violated Plaintiff's constitutional rights to Due Process.

150.    When Defendant ACERRO falsified said official government document her action conformed to, was consistent with, and in accordance with and in  adherence to the afforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

151.    Despite such notice and awareness, alleged herein, of the afore-mentione customs, usages, policies, practices, and procedures Defendant CITY failed to take corrective action and acted with deliberate indifference to Plaintiff's constitutional rights to Due Process.

152. Accordingly, the aforementioned allegations are the grounds on which Plaintiff THOMAS E. MILES, bases his EIGHTH CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 3) under Monell; Title 42 U.S.C. § 1983.

153.    When Defendant ACERRO conspired to falsify said official government document her actions conformed to, were in adherence to, were consistent with, and in accordance to the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

154.   Despite such notice and awareness, alleged herein, of the afore-mentioned customs, usages, policies, practices, and procedures Defen-dant CITY failed to take corrective action and acted with deliberate in-difference to Plaintiff's constitutional rights to Due Process.

155.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his NINETH CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 4) under Monell; Title 42 U.S.C. § 1983.

156.   When defendant BUTT conspired to falsify said official govern-ment document his actions conformed to, were in adherence to, were con-sistent with and in accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

157.   Despite such notice and awareness, alleged herein, of the aforementioned customs, usages, policies, practices, and procedures Defendant CITY failed to take corrective action and acted with deli-berate indifference to Plaintiff's constitutional rights to Due Pro-cess.

158.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his TENTH CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 5); under Monell; Title 42 U.S.C. § 1983.

159.   When NYPD Sgt. Michael Sena conspired to falsify said official government document his actions conformed to, were in adherence to, were consistent with, and in accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

160.   Despite such notice and awareness, alleged herein, of the afore-mentioned customs, usages, policies, practices, and procedures Defen-dant CITY failed to take corrective action and acted with deliberate indifference to Plaintiff's constitutional rights to Due Process.

161.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his ELEVENTH CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 6) under Monell; Title 42 U.S.C. § 1983.

162.   Immediately after Defendant AMAN assaulted Plaintiff he hand-cuffed Plaintiff's wrists behind his back; rolled him over onto his back and pushed him up into a sitting position and shouted at Plaintiff the approximate words, "Sit there and don't move. You're under arrest.".

163.   At that time Defendants ACERRO and BUTT arrived to the scene and stood next to Plaintiff along with Defendant AMAN.

164.   Defendant AMAN ordered Plaintiff to stand up.

165.   Plaintiff replied to Defendant AMAN's order by stating clearly, and directly to Defendants AMAN, ACERRO, and BUTT that he was seriously injured and that he was in substantial pain such that merely maintain-ing a sitting position on the side was causing intolerable pain and as such he was unable to stand up.

166.   Plaintiff asked Defendants AMAN, ACERRO, and BUTT to call an ambulance.

167. Defendant AMAN replied to Plaintiff's request for an ambulance and Plaintiff's complaints of severe pain with the approximate words, "Shut da fuck up! Stand up! Your ass is going to jail".

168   To wit of Defendants ACERRO and BUTT, defendant AMAN then positoioned himself behind Plaintiff, grabbed Plaintiff by his handcuffed arms and repeatedly yanked and pulled upwards on Plaintiff's arms, wrenching and rotating Plaintiff's arms to point of dislocation at the shoulder joint, thus lifting Plaintiff up from the sidewalk.

169.   Plaintiff cried out in pain due to the severe pain in his shoulders, left hip, lower back, and groin areas of his body and was unable to gain his feet or stand up.

170.   Defendant AMAN, to wit of Defendants ACERRO and BUTT then shoved Plaintiff back down to the sidewalk exacerbating Plaintiff's injuries and causing incalcuable pain to Plaintiff and Defendant AMAN shouted at Plaintiff the approximate words, " Fuck you! Sit there - your ass is still going to jail!".

171.   In committing the aforesaid acts against Plaintiff, Defendant AMAN did recklessly and wantonly use excessive force against Plaintiff, according to the standards previously set forth herein, in violation of Plaintiff's constitutional rights to be free from the use of Excessive force. and Defendant AMAN's actions were consistent with the aforementioned standards and definitions of the use of excessive force.

172.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his TWELFTH CAUSE OF ACTION: USE OF EXCESSIVE FORCE (Count 2); 4th Amendment U.S. Constitution; Title 42 § 1983.

173.   When Defendant AMAN used excessive force against Plaintiff he did so with malice aforethought ie. with the full knowledge and awareness that his actions would cause objectively serious injury and substantialypain to Plaintiff.

174.   With the aforesaid subjective state of mind, Defendant AMAN ignored the fact that his actions would cause objectively serious injury and substantial pain to Plaintiff and acted with deliberate indifference when he recklessly and wantonly, brutally lifted Plaintiff up from the sidewalk by his handcuffed arms and forcefully shoved Plaintiff back down to the sidewalk and thus inflicted cruel and unusual punishment on Plaintiff consistent with the standards and definitions heretofore described and in violation of Plaintiff's constitutional rights to be free from cruel and unusual punishment.

175.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his THIRTEENTH CAUSE OF ACTION: VIOLATION OF DUE PROCESS (Count 5); Cruel and Unusual Punishment; 14th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

176.    When Defendant AMAN used excessive force against Plaintiff, to wit of Defendant ACERRO as heretofore described, Defendant ACERRO was in close proximity to Defendant AMAN and to Plaintiff.

177.    Defendant ACERRO could readily see that Defendant AMAN was violating the constitutional rights of Plaintiff and could clearly hear Plaintiff's statements that he could not stand or walk and could clearly hear Plaintiff's cries of pain yet, despite having ample opportunity to intervene, Defendant ACERRO stood silently and idly by and took no affirmative action, in fact took no action what-soever, neither verbal or physical, to intervene in Defendant AMAN's violation of Plaintiff's constitutional rights to be free from the use of excessive force.

178.    Defendant ACERRO's failure to intervene in the violation of Plaintiff's constitutional rights was reckless, wanton, and violated Plaintiff's constitutional rights to be free from the failure to intervene in the violation of his constitutional rights to be free from the use of excessive force.

179.    Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his FOURTEENTH CAUSE OF ACTION : VIOLATION OF DUE PROCESS (Count 6); Failure to Intervene; 14th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

180.    When Defendant AMAN used excessive force against Plaintiff, to wit of Defendant BUTT as heretofore described, Defendant BUTT was in close proximity to Defendant AMAN and to Plaintiff.

181.    Defendant BUTT could readily see that Defendant AMAN was violating the constitutional rights of Plantiff and could clearly hear Plaintiff's statements that he could not stand or walk and could clearly hear Plaintiff's cries of pain yet, despite having ample opportunity to intervene, Defendant BUTT stood silently and idly by and took no affirmative action, in fact took no action what-soever, neither verbal or physical, to intervene in Defendant AMAN's violation of Plaintiff's constitutional rights to be free from the use of excessive force.

182.    Defendant BUTT's failure to intervene in the violation of Plaintiff's constitutional rights was reckless, wanton, and vio-lated Plaintiff's constitutional rights to be free from the failure to intervene in the violation of his constitutional rights to be free from the use of excessive force.

183. Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his FIFTEENTH CAUSE OF ACTION: VIOLATION OF DUE PROCESS (Count 7); Failure to Intervene; 14th Amendment U.S. Constitution; Title 42 § 1983.

184.    When Defendant AMAN used excessive force against Plaintiff in violation of Plaintiff's constitutional rights, Defendant AMAN's actions conformed to, were in adherence to, consistent with, and in

25

accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

185.    Despite such notice and awareness, alleged herein, of the aforementioned customs, usages, policies, practices, and procedures Defendant CITY failed to take corrective action and acted with deliberate indifference to Plaintiff's constitutional rights to be free from the use of excessive force.

186.    Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his SIXTEENTH CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 7); under Monell; Title 42 U.S.C. § 1983.

187.    When Defendant AMAN inflicted cruel and unusual punishment on Plaintiff, in violation of Plaintiff's constitutional rights, Defendant AMAN's actions conformed to, were in adherence to, were consistent with, and in accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

188.    Despite  such notice and awareness, alleged herein, of the aforementioned customs, usages, policies, practices, and procedures Defendant CITY failed to take corrective action and acted with deliberate indifference to Plaintiff's constitutional rights to be free from cruel and unusual punishment.

189.    Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his SEVENTEENTH CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 8); under Monell; Title 42 U.S.C. § 1983.

190.    When Defendant ACERRO failed to intervene in Defendant AMAN's violation of Plaintiff's constitutional rights when he used excessive force against Plaintiff Defendant ACERRO's actions conformed to, were in adherence to, were consistent with, and in accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

191.    Despite such notice and awareness, alleged herein, of the aforementioned customs, usagers, policies, practices, and procedures Defendant CITY failed to take corrective action and acted with deliberate indifference to Plaintiff's constitutional rights to be free from the failure to intervene in the violation of his constitutional rights to be free from the use of excessive force.

192.    Accordingly, the aforementioned allegations are the grounds on which  Plaintiff, THOMAS E. MILES, bases his EIGHTEENTH CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 9); under Monell; Title 42 U.S.C. § 1983.

193.    When Defendant ACERRO failed to intervene in Defendant AMAN's violation of Plaintiff's constitutional rights when he inflicted cruel and unusual punishment on him Defendant ACERRO's actions conformed to, were in adherence to, were consistent with, and in accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

26

194.    Despite such notice and awareness, alleged herein, of the afore-mentioned customs, usages, policies, practices, and procedures Defendant City failed to take corrective action and acted with deliberate indif-ference to Plaintiff's constitutional rights to be free from the failure to interven in the violation of his constitutional rights to be free from cruel and unusual punishment.

195.    Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his NINETEENTH CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 10) under Monell; Title 42 U.S.C. § 1983.

196.    When Defendant BUTT failed to intervene in Defendant AMAN's violation of Plaintiff's constitutional rights when he used excessive force against Plaintiff, Defendant BUTT's actions conformed to, were in adherence to, were consistent with, and in accordance with the afore-mentioned customs, usages, policies, practices, and procedures main-tained, tacitly approved, and endorsed by Defendant CITY.

197.    Despite such notice and awareness, alleged herein, of the afore-mentioned customs, usages, policies, practices, and procedures Defendant CITY failed to take corrective action and acted with deliberate indif-ference to Plaintiff's constitutional rights to be free from the failure to intervene in the violation of his constitutional rights to be free from the use of excessive force.

198.    Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his TWENTIETH CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 11) under Monell; Title 42 U.S.C. § 1983.

199.    When Defendant BUTT failed to intervene in Defendant AMAN's violation of Plaintiff's constitutional rights when he inflicted cruel and unusual punishment on Plaintiff his actions conformed to, were in adherence to, were consistent with, and in accordance with the afore-mentioned customs, usages, policies, practices, and procedures main-tained, tacitly approved, and endorsed by Defendant CITY.

200.    Despite such notices and awareness, alleged herein  of the aforementioned customs, usages, policies, practices, and procedures Defendant CITY failed to take corrective action and acted with delib-erate indifference to Plaintiff's constitutional rights to be free from the failure to intervene in the violation of his constitutional rights to be free from cruel and unusual punishment.

201.    Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his TWENTY FIRST  CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 12) under Monell; Titles 42 U.S.C. § 1983.

202.   An ambulance was eventually called and arrived and transported Plaintiff to BELLEVUE, accompanied by Defendants ACERRO and BUTT.

203.   At BELLEVUE Plaintiff presented as non-ambulatory and in severe pain.

204.   At BELLEVUE Defendant VASSALLO approached Plaintiff and asked Plaintiff what was the matter.

205.   Plaintiff told Defendant VASSALO that while he was lying prone, face-down on the sidewalk Defendant AMAN had driven his knee into the lower back area of Plaintiff's body with such powerful force that Plaintiff felt he was very seriously injured, and Plaintiff further, clearly, and directly told Defendant VASSALLO that he could not stand, could not walk, that he was in severe pain and that the force and shock and pain of the blow to his body had caused him to lose control of his bladder and urinate on himself.

206.   Defendant VASSALLO failed to conduct any semblence of a physical examination of Plaintiff - not even any cursory or perfuntory exam whatsoever, nor did she conduct any semblence of an interview with Plaintiff beyond merely asking him what was the matter.

207.   Defendant VASSALLO failed, inter alia, to perform any visual exam of Plaintiff's injured areas of his body, failed to palpate the injured areas of Plaintiff's body, failed to assess the range of motion of Plaintiff's left leg and or hip, failed to assess Plaintiff's pain level on the standard 1 to 10 scale, failed to provide any pain medication whatsoever, and failed to provide an appropriate medical screening examination pursuant to Title 42 U.S.C. § 1395dd    Medical Screening Requirement.

208.   Plaintiff was subsequently taken to the radiology department, x-rayed, and returned to the ER where he awaited the results of his x-rays, examination, and treatment.

209.   After about an hour, Plaintiff observed Defendant VASSALLO in conversation with Defendants ACERRA AND BUTT.

210.   Immediately after said conversation Defendants ACERRO and BUTT approached Plaintiff and informed him that Defendant VASSALLO had informed them that Plaintiff's x-rays indicated no injury and that he was discharged.

211.   Defendant VASSALLLO never returned to see, examine, or inform Plaintiff of her interpretation of Plaintiff's x-rays consistent with her ambivolent, deliberately indifferent attitude toward Plaintiff whereby the only interaction she conducted with Plaintiff was to ask him what's the matter and whereby she treated Plaintiff as a second class citizen by virtue of Plaintiff's status of an arrestee, and she did not even deign to inform Plaintiff of her interpretation (albeit incorrect interpretation) of Plaintiff's x-rays but instead improperly informed Defendants ACERRO and BUTT of her incorrect conclusion that Plaintiff was not injured and was fit for discharge.

212. It was later determined (nearly four months later) that Plaintiff had indeed sustained, iter alia, four (4) pelvic fractures, vertabrae injury, spinal disc damage, and nerve damage.

213.   It would take no stretch of the imagination of even a lay-person, untrained in the practice of medicine, that Plaintiff, presenting as he did at BELLEVUE to Defendant VASSALLO, with the injuries described herein; non-ambulatory, and in substantial pain, that Plaintiff had objectively serious medical needs.

214.   Defendant VASSALLLO discharged Plaintiff when Plaintiff was still non-ambulatory and did so without providing any mechanical aids for ambulation, ie. walking cane, crutches, or wheelchair nor did Defendant VASSALLO provide any medication for pain to Plaintiff at discharge or at any other time.

215.   In light of Plaintiff's condition, as described herein in which he presnted to Defendant VASSALLO, and in light of such notice and awareness of Plaintiff's condition, that the only medical care provided to Plaintiff was x-rays and that those x-rays were incorrectly read and interpretated, and that Plaintiff was discharged non-ambulatory, without mechanical aids for ambulation and without any pain medication, it is clear that Defendant VASSALLO was negligent, grossly negligent, and committed egregious medical mal-practice on Plaintiff, and Plaintiff is in great disagreement with the care provided but Defendant VASSALLOS actions and ommissions were far beyond any question of negligence, gross negligence, and/or medical mal-practice such that her actions and omissions raise a Federal question.

216.   That the only care provided to Plaintiff by Defendant VASSALLO was that of x-rays, and in light of Plaintiff's serious medical needs,and that he was discharged when he was still unable to stand or walk and without any aids for ambulation, the paltry medical care provided to Plaintiff was clearly less than de minimus care, far beyond any question of negligence or of a difference of opinion, but shows that the care provided to Plaintiff was clearly inadequate.

217.   As a trained and licensed medical doctor, Defendant VASSALLO knew that her failure to provide adequate medical care to Plaintiff would result in objectively serious injury to Plaintiff and would result in exacerbation of Plaintiff's serious injuries and would resultin substantial pain when Plaintiff was forced to walk on his fractured pelvis on discharge.

218.   Having such knowledge, Defendant VASSALLO had the subjective state of mind such that she knew her failure to provide adequate medical care to Plaintiff would result in objectively serious injury, exacerbation of serious injury, and substantial pain to Plaintiff yet despite such knowledge, notice, and awareness Defendant VASSALLO,with said subjective state of mind,did act with deliberate indifference to Plaintiff's serious medical needs and failed to provide adequate medical care to Plaintiff thus inflicting cruel and unusual punishment on Plaintiff in violation of Plaintiff's constitutional rights.

219.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his TWENTY SECOND CAUSE OF ACTION: VIOLATION OF DUE PROCESS (Count 8); Cruel and Unusual Punishment, 14th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

220.   When Defendant VASSALLO failed to provide an adequate medical screening to Plaintiff her failure was in violation of EMTALA Title 42 U.S.C. § 1395dd Medical Screening Requirement.

221.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his TWENTY THIRD CAUSE OF ACTION: VIOLATION OF EMTALA (Count 1); Title 42 U.S.C. § 1395dd    , Medical Screening Requirement.

222.   When Defendant CITY, through its New York City Health and Hospitals Corporation and BELLEVUE Hospital, failed to provide an adequate medical screening to Plaintiff their failure was in violation of EMTALA Title 42 U.S.C. § 1395dd,

223.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his TWENTY FOURTH CAUSE OF ACTION: VIOLATION OF EMTALA (Count 2); Title 42 U.S.C. § 1395dd    , Medical Screening Requirement.

224.   Defendant VASSALLO failed to contact the on-call specialist, failed to provide the necessary resources and care that were available at BELLEVUE to Plaintiff, and failed to transfer Plaintiff to a facility that could provide the necessary resources and care to Plaintiff in violation of EMTALA, Title 42 U.S.C. § 1395dd,

225.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his TWENTY FIFTH CAUSE OF ACTION: VIOLATION OF EMTALA (Count 3), Title 42 U.S.C. § 1395dd.    , Medical Screening Requirement.

226.   Defendant CITY, through its New York City Health and Hospitals Corporation and BELLEVUE Hospital, failed to contact the on-call specialist, failed to provide the necessary resources and care that were available at BELLEVUE to Plaintiff, and failed to transfer Plaintiff to a facility that could provide the necessary resources and care to Plaintiff in violation of EMTALA. Title 42 U.S.C § 1395dd.

227.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his TWENTY SIXTH CAUSE OF ACTION: VIOLATION OF EMTALA (Count 4); Title 42 U.S.C. § 1395dd.    Medical Screening Requirement.

228.   Defendant VASSALLO failed to stabilize Plaintiff before discharging him in violation of EMTALA, 42 U.S.C. § 1395dd    . Stabilization Requirement.

229.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his TWENTY SEVENTH CAUSE OF ACTION: VIOLATION OF EMTALA (Count 5); Title 42 U.S.C. § 1395dd    , Stabilization Requirement.

230.   Defendant CITY, through its New York City Health and Hospitals Corporation and BELLEVUE Hospital failed to stabilize Plaintiff before discharging him in violation of EMTALA, 42 U.S.C. § 1395dd    , Stabilization Requirement.

231.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his TWENTY EIGHTH CAUSE OF ACTION: VIOLATION OF EMTALA (Count 6); Title 42 U.S.C. § 1395dd    , Stabilization Requiement.

232.   Upon informing Plaintiff that he was discharged Defendants ACERRO and BUTT ordered Plaintiff to stand up and walk out of the ER.

233.   Plaintiff, loudly and vociferously, objected to being discharged without being provided adequate medical care, without being provided aid for ambulation, and without being provided pain medication all to wit and within ear-shot of defendant VASSALLO who stood nearby, in close proximity to Plaintiff, about ten feet away.

234.   Defendants ACERRO and BUTT proceded to grab Plaintiff and pull him up off the gurney on which he was sitting and while Plaintiff was handcuffed behind his back they pushed Plaintiff towards the exit causing Plaintiff to fall to the floor crying out in pain and repeating his loud pleas for medical care and repeating, loudly, that he had serious injuries and that he was in incalcuable pain, all to wit and within ear-shot of Defendant VASSALLO who stood nearby, in close proximity to Plaintiff, about ten feet away.

235.   Defendants ACERRO and BUTT, using excessive force and inflicting cruel and unusual punishment on Plaintiff, consistent with the excessive force and cruel and unusual punishment standards and descriptions aforementioned, repeatedly pulled Plaintiff up to his feet and pushed him toward the exit, while Plaintiff was handcuffed behind his back, causing Plaintiff to repeatedly fall to the floor crying out in excruciating pain and continuing to  plead loudly and vociferously for medical care, all to wit and within ear-shot of Defendant VASSALLO who stood nearby, in close proximity to Plaintiff, about ten feet away.

236.   When Defendant ACERRO used excessive force against Plaintiff as described above her actions were reckless, wanton and in violation of Plaintiff's constitutional rights.

237.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his TWENTY NINETH CAUSE OF ACTION: USE OF EXCESSIVE FORCE (Count 3); 4th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

238.   When Defendant BUTT used excessive force against Plaintiff as described above his actions were reckless, wanton, and in violation of Plaintiff's constitutional rights.

239.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his THIRTIETH CAUSE OF ACTION: USE OF EXCESSIVE FORCE (Count 4); 4th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

240.   When Defendant ACERRO inflicted cruel and unusual punishment on Plaintiff as described above her actions were reckless, wanton, and in violation of Plaintiff's constitutional rights.

241.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his THIRTY FIRST CAUSE OF ACTION: VIOLATION OF DUE PROCESS (Count 9); Cruel and Unusual Punishment, 14th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

242.   When Defendant BUTT inflicted cruel and unusual punishment on Plaintiff, as described above, his actions were reckless, wanton, and in violation of Plaintiff's constitutional rights.

243.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his THIRTY SECOND CAUSE OF ACTION: VIOLATION OF DUE PROCESS (Count 10) Cruel and Unusual Punishment, 14th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

244.   When Defendants ACERRO and BUTT used excessive force against Plaintiff to wit and within ear-shot of Defendant VASSALLO, as heretofore described, Defendant VASSALLO was in close proximity to the incident.

245.   Defendant VASSALLO could readily see that Defendants ACERRO and BUTT were violating the constitutional rights of Plaintiff and could clearly hear Plaintiff's cries of pain yet, despite having ample opportunity to intervene, Defendant VASSALLO  stood  silently and idly by and took no affirmative action, in fact took no action whatsoever, neither physical nor verbal, to intervene in Defendants ACERRO's and BUTT's violation of Plaintiffs constitutional rights to be free from the excessive use of force.

246.   Defendant VASSALLO's failure to intervene in the violation of Plaintiff's constitutional rights was reckless, wanton, and violated Plaintiff's constitutional rights to be free from the failure to intervene in the violation of his constitutional rights to be free from the use of excessive force.

247.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his THIRTY THIRD CAUSE OF ACTION: VIOLATION OF DUE PROCESS (Count 11) Failure to Intervene; 14th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

248.   When Defendants ACERRO and BUTT inflicted cruel and unusual punishment on Plaintiff to wit and within ear-shot of Defendant VASSALLO, as heretofore described, Defendant VASSALLO was in close proximity to the incident.

249.   Defendant VASSALLO could readily see that Defendants ACERRO and BUTT were violating the constitutional rights of Plaintiff and could clearly hear Plaintiff's cries of pain yet, despite having ample opportunity to intervene, Defendant VASSALLO stood silently and idly by and took no affirmative action, infact took no action whatsoever, neither physical nor verbal, to intervene in Defendants ACERRO and BUTT's violation of Plaintiff's constitutional rights to be free from cruel and unusual punishment.

250.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his THIRTY FOURTH CAUSE OF ACTION: VIOLATION OF DUE PROCESS (Count 12) Failure to Intervene; 14th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

251.   When Defendant BUTT used excessive force against Plaintiff as heretofore described Defendant ACERRO was in close proximity to the incident.

252.   Defendant ACERRO could readily see that Defendant BUTT was violating the constitutional rights of Plaintiff and could clearly hear Plaintiff's cries of pain yet, despite having ample opportunity to intervene, Defendant ACERRO stood silently and idly by and took no affirmative action, in fact took no action whatsoever, neither physical nor verbal, to intervene in Defendant BUTT's violation of Plaintiff's constitutional rights to be free from the use of excessive force.

253.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his THIRTY FIFTH CAUSE OF ACTION: VIOLATION OF DUE PROCESS (Count 13) Failure to Intervene, 14th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

254.   When Defendant BUTT inflicted cruel and unusual punishment on Plaintiff, as heretofore described, Defendant ACERRO was in close proximity to the incident.

255.   Defendant ACERRO could readily see that Defendant BUTT was violating the constitutional rights of Plaintiff and could clearly hear Plaintiff's cries of pain yet, despite having ample opportunity to intervene, Defendant ACERRO stood silently and idly by and took no affirmative action, in fact took no action whatsoever, neither physical nor verbal, to intervene in Defendant BUTT's violation of Plaintiff's constitutional rights to be free from cruel and unusual punishment

256.   Accordingly, the aforementioned alllegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his THIRTY SIXTH CAUSE OF ACTION: VIOLATION OF DUE PROCESS (Count 14) Failure to Intervene, 14th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

257.   When Defendant ACERRO used excessive force against Plaintiff, as heretofore described, Defendant BUTT was in close proximity to the incident.

258.   Defendant BUTT could readily see that Defendant ACERRO was violating the constitutional rights of Plaintiff and could clearly hear Plaintiff's cries of pain yet, despite having ample opportunity to intervene, Defendant BUTT stood silently and idly by and took no affirmative action, in fact took no action whatsoever, neither physical nor verbal, to intervene in Defendant ACERRO's violation of Plaintiff's constitutional rights to be free from the use of excessive force.

259.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his THIRTY SEVENTH CAUSE OF ACTION: VIOLATION OF DUE PROCESS (count 15)  Failure to Intervene, 14th Amendment U.S.Constitution; Title 42 U.S.C. § 1983.

260.   When Defendant ACERRO inflicted cruel and unusual punishment on Plaintiff, as heretofore described, Defendant BUTT was in close proximity to the incident.

261.   Defendant BUTT could readily see that Defendant ACERRO was violating the constitutional rights of Plaintiff and could clearly hear Plaintiff's cries of pain yet, despite having ample opportunity to intervene, Defendant BUTT stood silently and idly by and took no affirmative action, in fact took no action whatsoever, neither physical nor verbal, to intervene in Defendant ACERRO's violation of Plaintiff's constitutional rights to be free from cruel and unusual punishment.

262.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his THIRTY EIGHTH CAUSE OF ACTION: VIOLATION OF DUE PROCESS (Count 16) Failure to Intervene, 14th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

263.   When Defendant VASSALLO, at BELLEVUE, failed to provide adequate medical care to Plaintiff thus inflicting cruel and unusual punishment on Plaintiff in violation of his constitutional rights, Defendant VASSALLO's actions conformed to, were in adherence, were consistent with, and in accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

264.   Despite such notice and awareness, alleged herein, of these customs, usages, policies, practices, and procedures, Defendant CITY failed to take corrective action and acted with deliberate indifference to Plaintiff's constitutional rights to be free from cruel and unusual punishment.

265.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES bases his THIRTY NINETH CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 13) under Monell; Title 42 U.S.C. § 1983.

266.   When Defendant VASSALLO failed to provide an appropriate medical screening to Plaintiff, in violation of his constitutional rights and EMTALA her actions conformed to, were in adherence to, were consistent with, and in accordance with the the aforementioned customs, usages, policies, practices, and procedures maintained, Tacitly approved, and endorsed by Defendant CITY.

267.   Despite such notice and awareness, alleged herein, of these customs, usages, policies, practices, and procedures, Defendant CITY failed to take corrective action and acted with deliberate indifference to Plaintiff's constitutional rights.

268.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES bases his FORTIETH CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 14) under Monell; Title 42 U.S.C. § 1983.

269.   When Defendant VASSALLO, at BELLEVUE, failed to contact the on-call specialist, failed to provide the necessary resources and care to Plaintiff that were available at BELLEVUE, and failed to transfer Plaintiff to a facility that could provide the necessary care and resources to Plaintiff in violation of EMTALA and his constitutional rights, Defendant VASSALLO's actions coformed to, were in adherence to, were consistent with, and in accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

270.   Despite such notice and awareness, alleged herein, of these customs, usages, policies, practices, and procedures, Defendant CITY failed to take corrective action and acted with deliberate indifference to Plaintiff's constitutional rights.

271.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES bases his FORTY FIRST CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 15) under Monell; Title 42 U.S.C. § 1983.

272.   When Defendant VASSALLO, at BELLEVUE, failed to stabilize Plaintiff before discharging him in violation of EMTALA and his constitutional rights, Defendant VASSALLO's actions coformed to, were in adherence to, were consistent with, and in accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

273.   Despite such notice and awareness, alleged herein, of these customs, usages, policies, practices, and procedures, Defendant CITY failed to take corrective action and acted with deliberate indifference to Plaintiff's constitutional rights.

274.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES bases his FORTY SECOND CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 16) under Monell; Title 42 U.S.C. § 1983.

275.   When Defendant VASSALLO, at BELLEVUE, in violation of Plaintiff's constitutional rights, failed to intervene in Defendant ACERRO's and BUTT's unconstitutional use of excessive force against Plaintiff, Defendant VASSALLO's actions conformed to, were in adherence to, were consistent with, and in accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

276.   Despite such notice and awareness, alleged herein, of these customs, usages, policies, practices, and procedures, Defendant CITY failed to take corrective action and acted with deliberate indifference to Plaintiff's constitutional rights to be free from the use of excessive force.

277.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES bases his FORTY THIRD CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 17) under Monell; Title 42 U.S.C. § 1983.

278.   When Defendant VASSALLO, at BELLEVUE, in violation of Plaintiff's constitutional rights, failed to intervene in Defendants ACERRO's and BUTT's unconstitutional infliction of cruel and unusual punishment on Plaintiff, Defendant VASSALLO's actions coformed to, were in adherence to, were consistent with, and in accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

279.   Despite such notice and awareness, alleged herein, of these customs, usages, policies, practices, and procedures, Defendant CITY failed to take corrective action and acted with deliberate indifference to Plaintiff's constitutional rights to be free from cruel and unusual punishment.

280.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES bases his FORTY FOURTH CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 18) under Monell; Title 42 U.S.C. § 1983.

281.   When Defendant ACERRO, at BELLEVUE, in violation of Plaintiff's constitutional rights, used excessive force against Plaintiff, Defendant ACERRO's actions conformed to, were in adherence to, were consistent with, and in accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

282.   Despite such notice and awareness, alleged herein, of these customs, usages, policies, practices, and procedures, Defendant CITY failed to take corrective action and acted with deliberate indifference to Plaintiff's constitutional rights to be free from the use of excessive force.

283.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES bases his FORTY FIFTH CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 19) under Monell; Title 42 U.S.C. § 1983.

284.   When Defendant BUTT, at BELLEVUE, in violation of Plaintiff's constitutional rights, used excessive force against Plaintiff, Defendant BUTT's actions conformed to, were in adherence to, were consistent with, and in accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

285.   Despite such notice and awareness, alleged herein, of these customs, usages, policies, practices, and procedures, Defendant CITY failed to take corrective action and acted with deliberate indifference to Plaintiff's constitutional rights to be free from the use of excessive force.

286.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES bases his FORTY SIXTH CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 20) under Monell; Title 42 U.S.C. § 1983.

287.   When Defendant ACERRO, at BELLEVUE, in violation of Plaintiff's constitutional rights, inflicted cruel and unusual punishment on Plaintiff, Defendant ACERRO's actions conformed to, were in adherence to, were consistent with, and in accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

288.   Despite such notice and awareness, alleged herein, of these customs, usages, policies, practices, and procedures, Defendant CITY failed to take corrective action and acted with deliberate indifference to Plaintiff's constitutional rights to be free from cruel and unusual punishment.

289.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES bases his FORTY SEVENTH CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 21) under Monell; Title 42 U.S.C. § 1983.

290.   When Defendant BUTT, at BELLEVUE, in violation of Plaintiff's constitutional rights, inflicted cruel and unusual punishment on Plaintiff, Defendant BUTT's actions conformed to, were in adherence to, were consistent with, and in accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

291.   Despite such notice and awareness, alleged herein, of these customs, usages, policies, practices, and procedures, Defendant CITY failed to take corrective action and acted with deliberate indifference to Plaintiff's constitutional rights to be free from cruel and unusual punishment.

292.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES bases his FORTY EIGHTH CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 22) under Monell; Title 42 U.S.C. § 1983.

293.   When Defendant ACERRO, at BELLEVUE, in violation of Plaintiff's constitutional rights, failed to intervene in Defendant BUTT's unconstitutional use of excessive force against Plaintiff, Defendant ACERRO's actions conformed to, were in adherence to, were consistent with, and in accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

294.   Despite such notice and awareness, alleged herein, of these customs, usages, policies, practices, and procedures, Defendant CITY failed to take corrective action and acted with deliberate indifference to Plaintiff's constitutional rights to be free from the failure to intervene in the violation of his constitutional rights to be free from the use of excessive force.

295.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES bases his FORTY NINETH CAUSE OF ACTION: MUNICIPAL LIABILITY (Count (23) under Monell; Title 42 U.S.C. § 1983.

296.   When Defendant BUTT, at BELLEVUE, in violation of Plaintiff's constitutional rights, failed to intervene in Defendant ACERRO's unconstitutional use of excessive force against Plaintiff, Defendant BUTT's actions conformed to, were in adherence to, were consistent with, and in accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

297.   Despite such notice and awareness, alleged herein, of these customs, usages, policies, practices, and procedures, Defendant CITY failed to take corrective action and acted with deliberate indifference to Plaintiff's constitutional rights to be free from the failure to intervene in the violation of his constitutional rights to be free from the use of excessive force.

298.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES bases his FIFTIETH CAUSE OF ACTION: MUNICIPAL LIABILITY (Count (24) under Monell; Title 42 U.S.C. § 1983.

299.   When Defendant ACERRO, at BELLEVUE, in violation of Plaintiff's constitutional rights, failed to intervene in Defendant BUTT's unconstitutional infliction of cruel and unusual punishment on Plaintiff, Defendant ACERRO's actions conformed to, were in

adherence to, were consistent with, and in accordance with the aforementioned customs usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

300.   Despite such notice and awareness, alleged herein, of these customs, usages, policies, practices, and procedures, Defendant CITY failed to take corrective action and acted with deliberate indifference to Plaintiff's constitutional rights to be free from the failure to intervene in the violation of his constitutional rights to be free from cruel and unusual punishment.

301.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES bases his  FIFTY FIRST CAUSE OF ACTION: MUNICIPAL LIABILITY (Count (25) under Monell; Title 42 U.S.C. § 1983.

302.   When Defendant BUTT, at BELLEVUE, in violation of Plaintiff's constitutional rights, failed to intervene in Defendant ACERRO's unconstitutional infliction of cruel and unusual punishment on Plaintiff, Defendant BUTT's actions conformed to, were in adherence to, were consistent with, and in accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

303.   Despite such notice and awareness, alleged herein, of these customs, usages, policies, practices, and procedures, Defendant CITY failed to take corrective action and acted with deliberate indifference to Plaintiff's constitutional rights to be free from the failure to intervene in the violation of his constitutional rights to be free from cruel and unusual punishment.

304.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES bases his  FIFTY SECOND CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 26) under Monell; Title 42 U.S.C. § 1983.

305.   Upon Paintiff's unlawful discharge from BELLEVUE Defendants ACERRO and BUTT continued to brutalize Plaintiff with the use of excessive force and the infliction of cruel and unusual punishment against Plaintiff when they, while Plaintiff was hand-cuffed behind his back, repeatedly pushedand shoved Plaintiff outside to their patrol car causing Plaintiff to repeatedly fall to the ground without being able to break his fall with his hands or armscausing exacerbation of his serious injuries and incalcuable pain

306.   At the patrol car Defendants ACERRO and BUTT shoved Plaintiff backwards into the back seat of the car but Plaintiff was unable to lift his legs up into the car so Defendants ACERRO and BUTT each grabbed one of Plaintiff's ankles and rammed his legs into to the car causing exacerbation to Plaintiff's serious inuries and further incalcuable pain.

307.   While being transported in said patrol car to the 1st Precinct House by Defendants ACERRO and BUTT Plaintiff continued to beg to be returned to the hospital and Plaintiff's pleas were answered by the Defendants with the approximate words, "Shut da fuck up!. If you piss this car we're gonna break your other leg too!"; this threat, not only unlawful, shows Defendant ACERRO's and BUTT's cognizance of Plaintiff's serious injuries.

308.   Upon arrival at the precinct house Defendants ACERRO and BUTT continued in their brutalization of Plaintiff when they, while Plaintiff was still handcuffed behind his back, dragged Plaintiff out of the patrol car causing Plaintiff to fall to the ground whereupon they pulled him up to his feet and repeatedly pushed and shoved Plaintiff to-wards the entrance to the precinct house causing Plaintiff to  repeatedly fall to the ground being unable to break his fall with his handsArms  causing further exacerbation of Plaintiff's serious injuries and causing further incalcuable pain to Plaintiff.

309.   When Defendant ACERRO used excessive force against Plaintiff when she repeatedly pushed and shove Plaintiff to the ground while he was handcuffed when she and Defendant BUTT "escorted" Plaintiff from the patrol car into the precinct house,she did so in violation of Plaintiff's constitutional rights to be free from the use of excessive force.

310.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his FIFTY THIRD CAUSE OF ACTION: USE OF EXCESSIVE FORCE (Count 5); 4th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

311.   When Defendant BUTT used excessive force against Plaintiff, when he repeatedly pushed and shoved Plaintiff to the ground while Plaintiff was handcuffed , when he and Defendant ACERRO "escorted" Plaintiff from the patrol car into the precinct house, he did so in violation of Plaintiff's constitutional rights to be free from the use of excessive force.

312.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his FIFTYFOURTH CAUSE OF ACTION: USE OF EXCESSIVE FORCE (Count 6); 4th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

313.   When Defendant ACERRO used excessive force against Plaintiff, as aforementioned, she did so with malice aforethought, with the full knowledge and awareness that her actions would cause objectively serious injury and substantial pain to Plaintiff yet, despite such knowledge and awareness, Defendant ACERRO continued in her actions and was deliberately indifferent to Plaintiff's constitutional rights and did inflict cruel and unusual punishment on Plaintiff.

314.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his FIFTY FIFTH CAUSE OF ACTION: VIOLATION OF DUE PROCESS (Count 17); Cruel and Unusual Punishment; 14th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

315   When Defendant BUTT used excessive force against Plaintiff, as aforementioned, he did so with malice aforethought, with the full knowledge and awareness that his actions would cause objectively serious injury and substantial pain to Plaintiff yet, despite such knowledge and awareness, Defendant BUTT continued in his actions and was deliberately indifferent to Plaintiff's constitutional rights and did inflict cruel and unusual punishment on Plaintiff.

316.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his FIFTY SIXTH CAUSE OF ACTION: VIOLATION OF DUE PROCESS (Count 18); Cruel and Unusual Punishment; 14th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

317.   When Defendant ACERRO used excessive force against Plaintiff, as aforementioned, Defendant BUTT was in close proximity to the incident.

318.   Defendant BUTT could readily see that Defendant ACERRO was violating the constitutional rights of Plaintiff yet, despite having ample opportunity to intervene, Defendant BUTT took no affirmative action, infact he took no action whatsoever, neither physical nor verbal, to intervene in Defendant ACERRO's violation of Plaintiff's constitutional rights to be free from the use of excessive force.

319.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his FIFTY SEVENTH CAUSE OF ACTION: VIOLATION OF DUE PROCESS (Count 19); Failure to Intervene; 14th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

320.   When Defendant BUTT used excessive force against Plaintiff, as aforementioned, Defendant ACERRO was in close proximity to the incident.

321.   Defendant ACERRO could readily see that Defendant BUTT was violating the constitutional rights of Plaintiff yet, despite having ample opportunity to intervene, Defendant ACERRO took no affirmative action, infact she took no action whatsoever, neither physical nor verbal, to intervene in Defendant BUTT's violation of Plaintiff's constitutional rights to be free from the use of excessive force.

322.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his FIFTY EIGHTH CAUSE OF ACTION: VIOLATION OF DUE PROCESS (Count 20); Failure to Intervene; 14th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

323.   When Defendant BUTT inflicted cruel and unusual punishment on Plaintiff, as aforementioned, Defendant ACERRO was in close proximity to the incident.

324.   Defendant ACERRO could readily see that Defendant BUTT was violating the constitutional rights of Plaintiff yet, despite having ample opportunity to intervene, Defendant ACERRO took no affirmative action, infact she took no action whatsoever, neither physical nor verbal, to intervene in Defendant BUTT's violation of Plaintiff's constitutional rights to be free from cruel and unusual punishment.

325.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his FIFTY NINETH CAUSE OF ACTION: VIOLATION OF DUE PROCESS (Count 21); Failure to Intervene; 14th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

326.   When Defendant ACERRO inflicted cruel and unusual punishment on Plaintiff, as aforementioned, Defendant BUTT was in close proximity to the incident.

327.   Defendant BUTT could readily see that Defendant ACERRO was violating the constitutional rights of Plaintiff yet, despite having ample opportunity to intervene, Defendant BUTT took no affirmative action, in fact he took no action whatsoever, neither physical nor verbal, to intervene in Defendant ACERRO's violation of Plaintiff's constitutional rights to be free from cruel and unusual punishment.

328.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his SIXTIETH CAUSE OF ACTION: VIOLATION OF DUE PROCESS (Count 22); Failure to Intervene; 14th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

329.   When Defendant ACERRO used excessive force against Plaintiff, on arrival to the precinct house as aforementioned, Defendant ACERRO's actions conformed to, were in aherence to, were consistent with, and in accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

330. Despite such notice and awareness, as alleged herein, of the aforementioned customs, usages, policies, practices, and procedures Defendant CITY failed to take corrective action and acted with deliberate indifference to the constitutional rights of Plaintiff to be free from the use of excessive force.

331. Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his SIXTY FIRST CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 27); under Monell and Title 42 U.S.C. § 1983.

332. When Defendant BUTT used excessive force against Plaintiff, on arrival to the precinct house as aforementioned, Defendant BUTT's actions conformed to, were in adherence to, were consistent with, and in accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

333. Despite such notice and awareness, as alleged herein, of the aforementioned customs, usages, policies, practices, and procedures Defendant CITY failed to take corrective action and acted with deliberate indifference to the constitutional rights of Plaintiff to be free from the use of excessive force.

334. Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his SIXTY SECOND CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 28); under Monell and Title 42 U.S.C. § 1983.

335. When Defendant BUTT inflicted cruel and unusual punishment on Plaintiff, on arrival to the precinct house as aforementioned, Defendant BUTT's actions conformed to, were in adherence to, were consistent with, and in accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

336. Despite such notice and awareness, as alleged herein, of the aforementioned customs, usages, policies, practices, and procedures Defendant CITY failed to take corrective action and acted with deliberate indifference to the constitutional rights of Plaintiff to be free from cruel and unusual punishment.

337. Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his SIXTY THIRD CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 29); under Monell and Title 42 U.S.C. § 1983.

338. When Defendant ACERRO inflicted cruel and unusual punishment on Plaintiff, on arrival to the precinct house as aforementioned, Defendant ACERRO's actions conformed to, were in adherence to, were consistent with, and in accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

339. Despite such notice and awareness, as alleged herein, of the aforementioned customs, usages, policies, practices, and procedures Defendant CITY failed to take corrective action and acted with deliberate indifference to the constitutional rights of Plaintiff to be free from cruel and unusual punishment.

340. Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his SIXTY FOURTH CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 30); under Monell and Title 42 U.S.C. § 1983.

341.   When Defendant ACERRO failed to intervene in Defendant BUTT's Use of excessive force against Plaintiff, on arrival to the precinct house as aforementioned, Defendant ACERRO's actions conformed to, were in adherence to, were consistent with, and in accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

342.   Despite such notice and awareness, as alleged herein, of the aforementioned customs, usages, policies, practices, and procedures Defendant CITY failed to take corrective action and acted with deliberate indifference to the constitutional rights of Plaintiff.

343.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his SIXTY FIFTH CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 31); under Monell and Title 42 U.S.C. § 1983.

344.   When Defendant BUTT failed to intervene in Defendant ACERRO's Use of excessive force against Plaintiff, on arrival to the precinct house as aforementioned, Defendant BUTT's actions conformed to, were in adherence to, were consistent with, and in accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

345.   Despite such notice and awareness, as alleged herein, of the aforementioned customs, usages, policies, practices, and procedures Defendant CITY failed to take corrective action and acted with deliberate indifference to the constitutional rights of Plaintiff.

346.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his SIXTY SIXTH CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 32); under Monell and Title 42 U.S.C. § 1983.

347.   When Defendant BUTT failed to intervene in Defendant ACERRO's infliction of cruel and unusual punishment on Plaintiff, on arrival to the precinct house as aforementioned, Defendant BUTT's actions conformed to, were in adherence to, were consistent with, and in accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

348.   Despite such notice and awareness, as alleged herein, of the aforementioned customs, usages, policies, practices, and procedures Defendant CITY failed to take corrective action and acted with deliberate indifference to the constitutional rights of Plaintiff.

349.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his SIXTY SEVENTH CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 33); under Monell and Title 42 U.S.C. § 1983.

350.   When Defendant ACERRO failed to intervene in Defendant BUTT's infliction of cruel and unusual punishment on Plaintiff, on arrival to the precinct house as aforementioned, Defendant ACERRO's actions conformed to, were in adherence to, were consistent with, and in accordance with the aforementioned customs, usages, policies, practices, and procedures maintained, tacitly approved, and endorsed by Defendant CITY.

351.   Despite such notice and awareness, as alleged herein, of the aforementioned customs, usages, policies, practices, and procedures Defendant CITY failed to take

corrective action and acted with deliberate indifference to the constitutional rights of Plaintiff, THOMAS E. MILES.

352.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his SIXTY EIGHTH CAUSE OF ACTION: MUNICIPAL LIABILITY (Count 34); under Monell and Title 42 U.S.C. § 1983.

353.   After being processed for his arrest at the precinct house Plaintiff was escorted out of the precinct house by Defendants ACERRO and BUTT to the patrol car in the same brutal manner in which they escorted him out of BELLEVUE.

354.   While being escorted out of the precinct house to the patrol car by Defendants ACERRO and BUTT the Defendants repeatedly pushed and shoved Plaintiff to the ground while Plaintiff was handcuffed behind his back and unable to break his falls with his hands or arms whereby Defendants ACERRO and BUTT used excessive force against Plaintiff and inflicted cruel and unusual punishmement on Plaintiff consistent with the standards and descriptions of the use of force and infliction of cruel and unusual punishment aforementioned herein.

355.   Upon reaching the patrol car, Defendants ACERRO and BUTT pushed and shoved Plaintiff backwards in the rear seat of the car. Plaintiff was unable to lift his legs up into the car so Defendents ACERRO and BUTT each grabbed Plaintiff by his ankles and rammed his legs into the back seat of the car exacerbating Plaintiff's serious injuries and causing further incalcuable pain to Plaintiff.

356.   When Defendant ACERRO used excessive force against Plaintiff by repeatedly pushing and shoving him to the ground while he was handcuffed behind his back and when she brutally rammed Plaintiff's legs into the patrol car she did so in violation of Plaintiff's constitutional rights to be free from the use of excessive force.

357.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his SIXTY NINETH CAUSE OF ACTION: EXCESSIVE USE OF FORCE: (Count 7); 4th Amendment U.S.Constitution; Title 42 U.S.C. § 1983.

358.   When Defendant BUTT used excessive force against Plaintiff by repeatedly pushing and shoving him to the ground while he was handcuffed behind his back and when he brutally rammed Plaintiff's legs into the patrol car he did so in violation of Plaintiff's constitutional rights to be free from the use of excessive force.

359.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his SEVENTIETH CAUSE OF ACTION: EXCESSIVE USE OF FORCE: (Count 8); 4th Amendment U.S.Constitution; Title 42 U.S.C. § 1983.

360.   When Defendant BUTT inflicted cruel and unusual punishment on Plaintiff by repeatedly pushing and shoving him to the ground while he was handcuffed behind his back and when he brutally rammed Plaintiff's legs into the patrol car he did so in violation of Plaintiff's constitutional rights to be free from cruel and unusual punishment.

361.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his SEVENTY FIRST CAUSE OF ACTION: VIOLATION OF DUE PROCESS: (Count 23); Cruel and Unusual Punishment; 14th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

362.   When Defendant ACERRO inflicted cruel and unusual punishment on Plaintiff by repeatedly pushing and shoving him to the ground while he was handcuffed behind his back and when she brutally rammed Plaintiff's legs into the patrol car she did so in violation of Plaintiff's constitutional rights to be free  from cruel and unusual punishment.

363.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his SEVENTY SECOND CAUSE OF ACTION: VIOLATION OF DUE PROCESS: (Count 24); Cruel and Unusual Punishment; 14th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

364.   When Defendant ACERRO used excessive force against Plaintiff by repeatedly pushing and shoving him to the ground while he was handcuffed behind his back and when she brutally rammed Plaintiff's legs into the patrol car Defendant BUTT was in close proximity to the incident.

365.   Defendant BUTT could clearly see that Defendant ACERRO was violating the constitutional rights of Plaintiff, yet despite having ample opportunity to intervene, Defendant BUTT failed to intervene in the violation of Plaintiff's constitutional rights to be free from the use of excessive force.

366.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his SEVENTY THIRD CAUSE OF ACTION: VIOLATION OF DUE PROCESS: (Count 25); Failure to Intervene; 14th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

367.   When Defendant BUTT used excessive force against Plaintiff by repeatedly pushing and shoving him to the ground while he was handcuffed behind his back and when he brutally rammed Plaintiff's legs into the patrol car Defendant ACERRO was in close proximity to the incident.

368.   Defendant ACERRO could clearly see that Defendant BUTT was violating the constitutional rights of Plaintiff, yet despite having ample opportunity to intervene, Defendant ACERRO failed to intervene in the violation of Plaintiff's constitutional rights to be free from the use of excessive force.

369.   Accordingly, the aforementioned allegations are the grounds on which Plaintiff, THOMAS E. MILES, bases his SEVENTY FOURTH CAUSE OF ACTION: VIOLATION OF DUE PROCESS: (Count 26); Failure to Intervene; 14th Amendment U.S. Constitution; Title 42 U.S.C. § 1983.

370.   When Defendant BUTT inflicted cruel and unusual punishment on Plaintiff by repeatedly pushing and shoving him to the ground while he was handcuffed behind his back and when he brutally rammed Plaintiff's legs into the patrol car Defendant ACERRO was in close proximity to the incident.

371.   Defendant ACERRO could clearly see that Defendant BUTT was violating the constitutional rights of Plaintiff, yet despite having ample opportunity to intervene, Defendant ACERRO failed to intervene in the violation of Plaintiff's constitutional rights to be free from cruel and unusual punishment.