UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X
                                    :

THOMAS MILES,                             :

                                    :

                    Plaintiff,     :

                                    :           14-CV-9302 (VSB)

          - against -           :

                                    :        **OPINION & ORDER**

THE CITY OF NEW YORK; NYPD     :
OFFICER SEAN AMAN; NYPD OFFICER  :
KEVIN BUTT; NYPD OFFICER CYNTHIA  :
ACERRA; DR. SUSI VASSALLO (MD);  :
EMT ADAM VASQUEZ; NYC DOC CAPT.  :
WILLIAM SMITH; NYC DOC CAPT.    :
MANUEL GONZALEZ; JOSEPH       :
MCCREEDY; NYPD OFFICER DUANE   :
GROCE,                           :

                                    :

                    Defendants.  :

                                    :

----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: __8/3/2018__

Appearances:

Thomas E. Miles
Comstock, New York
*Pro Se Plaintiff*

Katherine Abigail Byrns
Megan Patricia Conger
Suzanna Publicker Mettham
New York City Law Department
New York, New York
*Counsel for the City Defendants*

Ana Maria Vizzo
Austa Starr Devlin
Daryl Paxson
David Rosen
Heidell, Pittoni, Murphy & Bach, LLP
New York, New York
*Counsel for Defendant Vassallo*

VERNON S. BRODERICK, United States District Judge:

Pro se Plaintiff Thomas Miles brings this action pursuant to 42 U.S.C. § 1983, alleging that Defendants New York City Police Department ("NYPD") Sergeant Sean Aman, NYPD Police Officer Kevin Butt, NYPD Police Officer Cynthia Acerra, New York City Department of Correction ("DOC") Captain William Smith, DOC Captain Manuel Gonzalez, DOC Correction Officer Duane Groce, New York City Fire Department Emergency Medical Technician ("EMT") Adam Vasquez, Physician Assistant ("PA") Joseph McCreedy (the "Individual City Defendants"), the City of New York (the "City" and collectively, the "City Defendants"), and Dr. Susi Vassallo violated his federal civil rights. Before me are the motions of the City Defendants and Dr. Vassallo to dismiss Plaintiff's third amended complaint ("TAC") in its entirety. For the reasons that follow, Defendants' motions are GRANTED.

## I.    **Background**[1]

On December 5, 2011, Plaintiff was arrested for Criminal Possession of a Weapon and Menacing. (*See* Mettham Decl. Ex. E.)[2] Plaintiff alleges that, during his arrest, he was subjected to excessive force by Defendants Sargeant Aman, Officer Butt, and Officer Accera (the "NYPD Defendants"). (TAC ¶¶ 62–105.) Plaintiff ultimately pled guilty to Attempted Criminal Possession of a Weapon in connection with his arrest. (*See* Mettham Decl. Ex. F.)

After Plaintiff was arrested, the NYPD Defendants called for an ambulance, and Plaintiff was transported to Bellevue Hospital. (TAC ¶ 202.) At Bellevue Hospital, Dr. Vassallo asked

---

[1] As discussed below, the TAC—the operative complaint in this action—is more than 300 pages long and contains over 2,000 specifically numbered paragraphs. The following factual background is therefore a brief summary of the facts as relevant to the instant motions. It is drawn from documents of which I take judicial notice, as well as the allegations in the TAC, which I assume to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My references to these allegations should not be construed as findings as to their veracity, and I make no such findings.

[2] "Mettham Decl." refers to the Declaration of Suzanna Publicker Mettham in Support of City Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(6), filed on March 6, 2017. (Doc. 111.)

Plaintiff "what was the matter," and he informed her of the circumstances of his arrest. (*Id.* ¶¶ 204–05.) He told her that he could not stand or walk, that he was in severe pain, and that he had urinated on himself. (*Id.* ¶ 205.) Despite this information, Dr. Vassallo failed to physically examine Plaintiff or provide him with any medication. (*Id.* ¶¶ 206–07.) However, Dr. Vassallo informed Officers Accera and Butt that "Plaintiff's x-rays indicated no injury" and that he could be discharged. (*Id.* ¶¶ 210–11.) Thereafter, Plaintiff was released to the custody of the NYPD Defendants, who first transported Plaintiff to the precinct, and then to central booking.

While at central booking, EMT Vasquez examined Plaintiff and cleared him to proceed with the booking process. (*Id.* ¶¶ 493–95.) After Plaintiff was arraigned, he was transferred to the Manhattan Detention Complex ("MDC"), where he was "brutalized by other detainees" in the MDC holding cell. (*Id.* ¶¶ 527–28.) Defendants Captain Smith and Captain Gonzalez "took no action whatsoever to stop the attack" including by failing to direct their subordinates to do so. (*Id.* ¶¶ 530–32, 611–14.) Additionally, while he was in the MDC holding cell, Plaintiff "needed to use the toilet but being incapacitated by his serious injuries he was unable to get up." (*Id.* ¶ 526.) Plaintiff pleaded with Defendants Captain Smith and Captain Gonzalez to be removed from the cell and returned to the hospital, but Defendant Captain Smith instead told him that he would not get "special treatment" because he was "white" and swore at him. (*Id.* ¶¶ 609–11.)

After "countless hours in the over-crowded [MDC holding cell,] where Plaintiff continued to be subjected to numerous, sporadic attacks by other detainees," Plaintiff was taken to a clinic at the MDC. (*Id.* ¶ 646.) At the clinic, Plaintiff was seen by Defendant PA McCreedy. (*Id.* ¶ 647.) Plaintiff explained that he had been seriously injured and was in "intolerable pain," and he begged to be sent back to Bellevue Hospital or to the jail's infirmary.

(*Id.* ¶ 648.)  Defendant PA McCreedy told him that "Plaintiff's condition clearly indicated hospitalization but he did not have the authority to send Plaintiff back to the hospital or to send him to the infirmary."  (*Id.* ¶ 649.)  He thus refused Plaintiff's pleas for further treatment and cleared Plaintiff for general population placement.  (*Id.* ¶¶ 648–51.)

After several weeks of inadequate medical care, Plaintiff was treated at another clinic on or about February 22, 2012.  (*Id.* ¶ 714.)  During this visit, the doctor on duty informed Plaintiff that his "MRI results indicated that [he] had sustained four fractures to his pelvis, damage to his lumbar vertebrae, damage to spinal disc tissue, [and] nerve damage."  (*Id.* ¶ 714.)  Although Plaintiff sought to receive further treatment and physical therapy, it was never provided to him.  (*Id.* ¶¶ 720–24.)

Plaintiff did not file a grievance in connection with these alleged incidents because he feared reprisal from Defendants and because he was "threatened by Defendants" with the prospect of Defendants losing his paperwork and losing him in the system if he continued to complain about his pain or if he asked to be returned to the hospital.  (*Id.* ¶ 53.)  He was also unable to leave his cell and was thus prevented access to any grievance process.  (*Id.* ¶ 59.)  Furthermore, "even if Plaintiff had pen and paper in his cell—which he did not—Plaintiff was . . . wracked with excruciating pain," and his injuries prevented him from writing and filing a grievance.  (*Id.* ¶ 60.)

## II.     Procedural History

On November 20, 2014, Plaintiff commenced this action by filing his complaint ("Original Complaint").  (Doc. 1.)  On January 5, 2015, I issued an order, *sua sponte*, pursuant to *Valentin v. Dinkins*, 121 F.3d 72, 76 (2d. Cir. 1997), requesting that Defendant City attempt to determine the identities of John Does #1 through #14 and provide the addresses at which those

individuals could be served.[3]  (Doc. 7 (the "Valentin Order").)  On October 6, 2015, Plaintiff

filed his first amended complaint ("FAC"), (Doc. 31), naming Defendants Sergeant Aman,

Officer Butt, Officer Accerra, EMT Vasquez, Captain Smith, Captain Gonzalez, PA McCreedy,

Correction Officer Groce, and Dr. Vassallo in place of several of the John Does.  Thereafter,

Plaintiff filed a second amended complaint ("SAC") on February 22, 2016, (Doc. 51), naming

the same individuals as he did in the FAC.

On August 24, 2016, the parties appeared before me for a telephone conference to discuss

Defendants' anticipated motions to dismiss the SAC.  (*See* Doc. 77.)  At the conference, I

permitted Defendants to file their motions, directing Plaintiff to file either an opposition or an

amended complaint in response to those motions.  Specifically, I explained that Plaintiff could

file an amended complaint in lieu of an opposition and stated the following:  "[I]f you think there

are additional facts that you could add that would deal with the motions that the defendants are

going to make, once you see their papers, you can . . . file whatever amended pleading—

amended complaint—that you think would deal with their arguments."  (8/4/16 Tr. 7:11-18.)[4]

On September 22, 2016, Dr. Vassallo filed her motion to dismiss the SAC, (Doc. 79), and

the City Defendants filed their motion on October 3, 2016, (Doc. 85).  After Plaintiff requested

that I clarify my prior instruction and ruling from the telephone conference on August 24, 2016,

(Doc. 89), I issued a written order noting the following:  "Plaintiff can either file an amended

complaint if he believes he can cure the deficiencies noted in Defendants' motion to dismiss,

or—if he believes his complaint does not have the deficiencies asserted by Defendants such that

---

[3] Plaintiff's Original Complaint also named John Does #15 through #35.  Because the Original Complaint did not
provide sufficient information to permit the NYPD or DOC to determine the identities of individuals meeting the
provided descriptions of individuals allegedly involved in violating Plaintiff's rights, I declined to order the New
York City Law Department to provide Plaintiff with the identities and service addresses of those John Doe
defendants.  (*See* Doc. 7.)

[4] "8/4/16 Tr." refers to the transcript of the telephone conference held on August 24, 2016 in this matter.

it can survive the motion to dismiss—he can file a brief/papers in response arguing for why [Defendants'] motion is incorrect."  (Doc. 90.)

On February 2, 2017, Plaintiff filed the TAC in response to Defendants' motions to dismiss.  (Doc. 98.)  In light of Plaintiff's filing of the TAC, I denied the pending motions to dismiss as moot with leave to re-file.  (Doc. 99.)  On March 6, 2017, the City Defendants filed their motion to dismiss the TAC and supporting materials, (Docs. 109–11), as did Dr. Vassallo, (Docs. 105–07).  Plaintiff filed an opposition to both motions on June 12, 2017.  (Doc. 117.)  On July 6, 2017, the City Defendants and Dr. Vassallo each filed a reply in further support of their motions.  (Docs. 118–19.)

### III.  Legal Standards

#### A.  *Motion to Dismiss*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Plausibility . . . depends on a host of considerations:  the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor.  *See*

*Kassner*, 496 F.3d at 237. A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted).

Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest." *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory factual allegations. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). In other words, the "duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted).

## B. *Motion to Strike*

Rule 8 provides that a complaint shall contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a complaint does not comply with Rule 8, the court may, on its own initiative, dismiss the complaint in its entirety or strike portions that are redundant or immaterial. *See* Fed. R. Civ. P. 12(f). "Dismissal, however,

is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

      **C.**    *Section 1983*

Section 1983 provides a civil claim for damages against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). "To state a claim under § 1983, a plaintiff must allege that defendants violated plaintiff's federal rights while acting under color of state law." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1703 (2015). Further, "in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Alternatively, "[t]o impose liability on a municipality under § 1983, a plaintiff must 'identify a municipal policy or custom that caused the plaintiff's injury.'" *Newton v. City of New York*, 779 F.3d 140, 152 (2d Cir. 2015) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)).

    **IV.**    **Discussion**

      **A.**    *The Third Amended Complaint*

The TAC is 329 pages and contains nearly 2,000 specifically numbered, single-spaced paragraphs. Plaintiff asserts 171 causes of action—many of which are duplicative, disorganized, and/or contradictory. Courts have dismissed complaints pursuant to Rule 8(a)(2) that are far

shorter and clearer than the TAC. *See, e.g.*, *Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584, 595 (S.D.N.Y. 2013) (dismissing complaint that was "over 300 pages long and contain[ed] 1000 specifically numbered paragraphs" and collecting cases); *Martin Luther King Jr. H.S. Parents v. N.Y.C. Dep't of Educ.*, No. 02 Civ. 1689(MBM), 2004 WL 1656598, at *2 (S.D.N.Y. July 23, 2004) (dismissing complaint that was "nearly 60 pages and comprise[d] 597 numbered paragraphs, many containing sub-paragraphs, and still more unnumbered paragraphs"), *aff'd in relevant part, but vacated sub nom. Blakely v. Wells*, 209 F. App'x 18, 20 (2d Cir. 2006) (summary order) ("The District Court acted within the bounds of permissible discretion in dismissing the second amended complaint for noncompliance with Rule 8(a). The pleading, which spanned 57 pages and contained 597 numbered paragraphs, was far from short or plain."). Nonetheless, I am mindful of both Plaintiff's pro se status and Defendants' efforts thus far to address all of Plaintiff's claims. (*See* City Defs. Reply 10.)[5] Accordingly, I will not dismiss the TAC in its entirety for failure to meet the pleading requirements of Rule 8(a).

I will, however, strike the portions of the TAC that are beyond the scope of the leave to amend I granted. Although motions to strike are generally disfavored, *see Lipsky v. Corn. United. Corp.*, 551 F.2d 887, 893 (2d Cir. 1976), they may be appropriate where a plaintiff has exceeded the scope of his leave to amend, *see Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (summary order) ("District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted."). I granted Plaintiff leave to file the TAC in response to Defendants' motions to

---

[5] "City Defs. Reply" refers to the Memorandum of Law in Support of City Defendants' Reply to Plaintiff's Opposition to City Defendants' Motion to Dismiss the Third Amended Complaint Pursuant to FRCP 12(b)(6) and 12(f). (Doc. 118.)

dismiss the SAC, but I did not grant him leave to file any new causes of action. Accordingly, I find that Plaintiff's 167 newly-asserted causes of action fall outside the scope of the leave I granted, and they are struck from the TAC as immaterial and dismissed pursuant to Federal Rule of Civil Procedure 12(f). *See Kuntz v. N.Y. State Bd. of Elections*, 924 F. Supp. 364, 367 (N.D.N.Y. 1996) (dismissing causes of action in amended complaint that exceeded the scope of the court's permission to amend and striking them as immaterial under Rule 12(f)), *aff'd sub nom. Kuntz v. N.Y. State Senate*, 113 F.3d 326 (2d Cir. 1997).

After striking the newly-asserted causes of action, four causes of action under § 1983 remain: (1) "deprivation of rights," (TAC ¶¶ 93–100); (2) failure to intervene, (*id.* ¶¶ 101–04); (3) supervisory liability, (*id.* ¶¶ 105–07); and (4) municipal liability, (*id.* ¶¶ 108–13). Construing these four causes of action liberally, as I must, and considering the TAC as a whole, I find the TAC alleges the following claims: (1) excessive force; (2) failure to intervene; (3) deliberate indifference to medical needs; (4) conditions of confinement; (5) equal protection; and (6) municipal liability.[6] Because Plaintiff's claims are time-barred or otherwise fail to state a claim under Rule 12(b)(6), Defendants' motions are granted.

---

[6] Plaintiff refers to his purported innocence throughout the SAC, which could be read to assert a false arrest claim. (*See, e.g.*, SAC ¶ 18 ("Plaintiff had no reason to believe he was being sought or pursued.").) The TAC, however, does not contain these protestations of innocence. To the extent that the TAC may be liberally construed to allege a false arrest claim, I find that such a claim is barred because Plaintiff's guilty plea establishes probable cause as a matter of law. *See Wims v. N.Y.C. Police Dep't*, No. 10 Civ. 6128(PKC), 2011 WL 2946369, at *3 (S.D.N.Y. July 20, 2011) ("[Plaintiff's] guilty plea establishes that there was probable cause for his arrest and stands as a complete bar to any claims of false arrest . . . under Section 1983." (internal quotation marks omitted)).

## B.       *Statute of Limitations*

Defendants move to dismiss Plaintiff's claims against them on statute of limitations grounds.[7]  (City Defs. Mem. 5–14; Vassallo Mem. 7–13.)[8]  Defendants also argue that each of Plaintiff's claims fails to state a claim under Rule 12(b)(6).  Because I find that Plaintiff's claims do not relate back under Rule 15(c), Plaintiff's claims are untimely and must be dismissed.

### 1.  Applicable Law

Since § 1983 does not provide a specific statute of limitations, "courts apply the statute of limitations for personal injury actions under state law."  *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013).  "Section 1983 actions filed in New York are therefore subject to a three-year statute of limitations."  *Id.*; *see also* N.Y. C.P.L.R. § 214.  The accrual date for a § 1983 action, however, is "a question of federal law that is not resolved by reference to state law."  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  Instead, it is governed by "federal rules conforming in general to common-law tort principles."  *Id.*  Under those principles, "the standard rule [is] that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."  *Id.* (citations and internal quotation marks omitted).

### a.  Relation Back under Rule 15(c)(1)(C)

Even if the statute of limitations has expired as to claims against a defendant, a court may entertain those claims if they "relate back" to the original pleading or if equitable tolling applies.  Federal Rule of Civil Procedure 15(c)(1)(C) "provides the federal standard for relation back."  *Hogan*, 738 F.3d at 517.  For a claim against a defendant to relate back under Rule 15(c)(1)(C),

---

[7] While a statute of limitations defense is an affirmative defense that a defendant must plead, Fed. R. Civ. P. 8(c)(1), a defendant may raise it in a pre-answer motion to dismiss under Rule 12(b)(6) when "the defense appears on the face of the complaint," *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008).

[8] "City Defs. Mem." refers the Memorandum of Law in Support of City Defendants' Motion to Dismiss the TAC Pursuant to FRCP 12(b)(6) and 12(f).  (Doc. 110.)  "Vassallo Mem." refers to the Memorandum of Law in Support of Motion to Dismiss TAC by Defendant Dr. Susi Vassallo.  (Doc. 107.)

the following requirements must be met:

> (1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party should have known that, but for a mistake of identity, the original action would have been brought against it; and . . . [4] the second and third criteria are fulfilled within 120 days of the filing of the original complaint, and . . . the original complaint [was] filed within the limitations period.

*Id.* (alteration in original) (quoting *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468–69 (2d Cir. 1995)). However, the "failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake." *Id.* at 518 (quoting *Barrow*, 66 F.3d at 470); *see also Scott v. Vill. of Spring Valley*, 577 F. App'x 81, 82–83 (2d Cir. 2014) (summary order) (holding that a proposed amendment failed to satisfy Rule 15(c)(1)(c) where it did not "correct a mistake of fact, but rather [sought] to add information—the names of the officers involved—that [plaintiff] lacked when he filed the complaint" (citation omitted)). Therefore, where a plaintiff fails to amend and identify John Doe defendants in a § 1983 action within the statute of limitations period, any amended complaint naming those individuals after the expiration of the statute of limitations cannot be said to relate back under Rule 15(c)(1)(C). *See Hogan*, 738 F.3d at 518 ("This Court's interpretation of Rule 15(c)(1)(C) makes clear that lack of knowledge of a John Doe defendant's name does not constitute a mistake of identity." (internal quotation marks omitted)); *Vasconcellos v. City of New York*, No. 12 Civ. 8445(CM), 2014 WL 4961441, at *8 (S.D.N.Y. Oct. 2, 2014) (holding that plaintiff could not amend her complaint to name the John Doe officers because the three-year statute of limitations had expired); *Askins v. City of New York*, 10 Civ. 2230 (CM), 2012 WL 12884363, at *8–9 (S.D.N.Y. Feb. 13, 2012) (denying plaintiff leave to amend to identify John Doe defendants as the amendment would not "'relate back' to the original, timely complaint"), *aff'd in relevant*

*part*, 727 F.3d 248 (2d Cir. 2013).

b.   Relation Back under Rule 15(c)(1)(A)

In addition to relation back under Rule 15(c)(1)(C), "Rule 15(c)(1)(A) permits an

amended pleading to relate back when the law that provides the applicable statute of limitations

allows relation back." *Hogan*, 738 F.3d at 509 (internal quotation marks omitted).  In other

words, an amended complaint "relates back if New York law, which provides the applicable

statute of limitations [for § 1983 claims in New York], authorizes relation back." *Vasconcellos*,

2014 WL 4961441, at *7.  Under New York law, a party seeking relation back for a previously

unknown defendant may utilize New York Civil Practice Law and Rules ("C.P.L.R.") § 203

(New York's general relation back statute) or C.P.L.R. § 1024 (New York's John Doe procedural

rule).  *See Strada v. City of New York*, No. 11-CV-5735 (MKB), 2014 WL 3490306, at *6–8

(E.D.N.Y. July 11, 2014).

Section 203 of the C.P.L.R. provides that claims against a new defendant relate back to

timely-filed pleadings when:

> (1) the new claim arose out of the same conduct, transaction or occurrence as the
> original allegations; (2) the new party is united in interest with the original
> defendant, and by reason of that relationship can be charged with such notice of the
> institution of the action that he will not be prejudiced in maintaining his defense on
> the merits; and (3) the new party knew or should have known that, but for a mistake
> as to the identity of the proper parties, the action would have been brought against
> him as well.

*Id.*  (citation omitted).  "New York courts have held, however, that a plaintiff may not add a new

defendant under [C.P.L.R. § 203] unless 'the new party knew or should have known that, but for

an *excusable mistake* by plaintiff as to the identity of the proper parties, the action would have

been brought against him as well.'"  *Vasconcellos*, 2014 WL 4961441, at *8 (quoting *Malament

v. Vasap Constr. Corp.*, 728 N.Y.S.2d 381, 381 (2d Dep't 2001) and collecting cases).  "This

requirement closely tracks the federal relation-back requirement of Rule 15(c)(1)(C)." *Id.*; *see also Bender v. City of New York*, No. 14 Civ. 4386(LTS)(GWG), 2015 WL 524283, at *6 (S.D.N.Y. Feb. 10, 2015) ("The third prong of § 203(c) employs the same standard as the federal rule." (internal quotation marks omitted)); *Buran v. Coupal*, 661 N.E.2d 978, 982 (N.Y. 1995) (stating that C.P.L.R. § 203 was "patterned" after Rule 15(c) of the Federal Rules).

Section 1024 of the C.P.L.R. provides:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

N.Y. C.P.L.R. § 1024. "New York courts have interpreted this section to permit John Doe substitutions *nunc pro tunc*." *Hogan*, 738 F.3d at 518–19 (collecting cases). A plaintiff must meet two initial requirements: "First, the party must 'exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name.'" *Id.* (quoting *Bumpus v. N.Y.C. Transit Auth.*, 883 N.Y.S.2d 99, 104 (2d Dep't 2009)). "Second, the party must describe the John Doe party 'in such form as will fairly apprise the party that he is the intended defendant.'" *Id.* at 519 (quoting *Bumpus*, 883 N.Y.S.2d at 104). To satisfy the due diligence requirement, the plaintiff must "show that he or she made timely efforts to identify the correct party before the statute of limitations expired," such as "serving discovery demands on any known parties or seeking disclosures pursuant to a Freedom of Information Law ('FOIL') request." *Cotto v. City of New York*, Nos. 15 Civ. 9123 (RWS), 16 Civ. 226 (RWS), 2017 WL 3476045, at *5 (S.D.N.Y. Aug. 11, 2017) (internal quotation marks omitted). "Federal and New York courts have held that where there is no indication in the record that a plaintiff has exercised due diligence prior to the expiration of the statute of limitations, a plaintiff is not entitled to make use of the 'John Doe'

procedure provided in CPLR § 1024." *Ceara v. Deacon*, 68 F. Supp. 3d 402, 409 (S.D.N.Y. 2014) (collecting cases).

### c. Equitable Tolling

"Under New York law, the doctrines of equitable tolling or equitable estoppel 'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (quoting *Doe v. Holy See (State of Vatican City)*, 793 N.Y.S.2d 565, 568 (3d Dep't 2005)). "'Due diligence on the part of the plaintiff in bringing an action,' however, is an essential element of equitable relief." *Id.* (quoting *Holy See*, 793 N.Y.S.2d at 569). The plaintiff bears the burden of showing equitable tolling is warranted, and "[i]f a plaintiff cannot 'articulate any acts by defendants that prevented him from timely commencing suit' then he has 'failed to meet his burden of showing that he was wrongfully induced by defendants not to commence suit.'" *Id.* (quoting *Holy See*, 793 N.Y.S.2d at 569).

### 2. Claims against the Individual City Defendants

The Individual City Defendants argue that Plaintiff's claims against them are time-barred, do not relate back to the Original Complaint under any relevant provision, and cannot be equitably tolled. (City Defs. Mem. 5–14.) I agree.

Plaintiff alleges that "[t]he events that give rise to the instant action occurred on December 5, 2011"—the date of his arrest. (TAC ¶ 11.) Although the precise timing of the events over the following days are unclear in the TAC, Plaintiff describes the incidents as happening after the date of his arrest and prior to the date he was cleared to enter general population. (*See, e.g.*, *id.* ¶¶ 530–32, 611–13.) In the Original Complaint, Plaintiff alleged that he was cleared to enter general population on December 8, 2011. (*See* Compl. ¶ 35.) Therefore,

the claims accrued against all Individual City Defendants, at the latest, on December 8, 2011. Therefore, the statute of limitations on all of plaintiff's purported claims expired three years later on December 8, 2014.

Although Plaintiff filed the Original Complaint on November 20, 2014, he did not name any of the Individual City Defendants until October 6, 2015, when he filed the FAC. By October 6, the statute of limitations had long expired.[9] Accordingly, I can only entertain claims against the Individual City Defendants if they "relate back" to the Original Complaint or if equitable tolling applies.

Plaintiff's claims against the Individual City Defendants do not relate back to the Original Complaint under Rule 15(c)(1)(C). Plaintiff was not mistaken as to the identities of the John Doe defendants at the time he filed the Original Complaint; rather, he was simply ignorant of their identities. Under these circumstances, there is simply no "mistake" as to the identity of the officers involved. *See Hogan*, 738 F.3d at 517–18. Because this failure to name or identify the Individual City Defendants cannot be characterized as a "mistake," the TAC does not relate back to the Original Complaint under Rule 15(c)(1)(C).

Similarly, Plaintiff's claims against the Individual City Defendants also do not relate back under Rule 15(c)(1)(A), which allows a plaintiff to utilize the applicable statute of limitations under state law authorizing relation back. As an initial matter, Plaintiff cannot rely

---

[9] Plaintiff argues that his claims against the Individual City Defendants accrued on February 22, 2012—the date Plaintiff alleges that he was informed by medical staff of the extent of his injuries. (TAC ¶ 13; Pl.'s Opp. 3, 5.) It is irrelevant to the accrual of Plaintiff's claims that certain of his injuries were not diagnosed until February 22, 2012 because he knew he was the subject of the constitutional violations at the moment they occurred. In any event, even if the statute of limitations did not begin to run until February 22, 2012—which it did not—the statute of limitations period would have expired on February 22, 2015, which was well before Plaintiff named the Individual City Defendants in the FAC. "Pl.'s Opp." refers to Plaintiff's Answer to Defendants' Motion to Dismiss the Third Amended Complaint and Plaintiff's Answer to Defendant Vassallo's Motion to Dismiss the Third Amended Complaint. (Doc. 117.) The page numbers cited correspond to the page numbers assigned by the Electronic Court Filing system.

on New York's relation-back doctrine set forth in C.P.L.R. § 203(c) for the same reasons he cannot rely on the relation-back doctrine under Rule 15(c)(1)(C) of the Federal Rules. *See Vasconcellos*, 2014 WL 4961441, at *8 (stating that the third requirement of C.P.L.R. § 203 "closely tracks the federal relation-back requirement of Rule 15(c)(1)(C)"). Because Plaintiff cannot satisfy Rule 15(c)(1)(C), he also fails to satisfy C.P.L.R. § 203 with respect to his claims against the Individual City Defendants.

Nor can Plaintiff invoke New York's John Doe procedural rule set forth in C.P.L.R. § 1024 to save his claims. Under C.P.L.R. § 1024, the § 1983 claims in the FAC relate back to the Original Complaint if Plaintiff (1) "exercise[d] due diligence, prior to the running of the statute of limitations, to identify the defendants by name;" and (2) "describe[d] the John Doe part[ies] in such form as [would] fairly apprise the part[ies] that [they were] the intended defendants." *Hogan*, 738 F.3d at 518–19 (citation and internal quotation marks omitted). To satisfy the due diligence requirement, Plaintiff alleges in the TAC that he contacted an attorney in mid-April 2013 to seek representation—an assertion that was not made in his prior complaints. (TAC ¶ 35.) The attorney informed him that a FOIL request could be filed to obtain the identities of the John Doe defendants, or that the "Judge or Magistrate would generally order (pursuant to <u>Valentin v. Dinkins</u>) the Defendants and/or Counsel for the Defendants to provide the names of the Defendants to the Plaintiff." (*Id.* ¶ 36.) The attorney also advised him that FOIL requests "routinely go unanswered." (*Id.* ¶ 37.) Although the attorney ultimately declined to represent him, Plaintiff attempted to file a FOIL request with the NYPD, but did not receive a response. (*Id.* ¶ 38.) On multiple occasions "in early June" and "July 2013," Plaintiff visited the NYPD, seeking the names and shield numbers of the police officers who arrested him, but he was informed that "the NYPD does not provide names of its employees to civilians, with or

without FOIL requests, for security reasons and the only way [he] could obtain said names was through a Court Order," which Plaintiff admits was consistent with what the attorney had told him. (*Id.* ¶¶ 40, 43–44.) Additionally, Plaintiff contacted "several other attorneys" who advised him that a FOIL request was likely to be unsuccessful and that plaintiff "would have to rely on an order of the Court directing defendants to provide the names and shield numbers." (*Id.* ¶ 45.)

Accepting all of Plaintiff's allegations as true and drawing all inferences in his favor, these allegations fail to satisfy the due diligence requirement under C.P.L.R. § 1024, and instead indicate that Plaintiff was undoubtedly aware that his claims were set to expire. Plaintiff's actions "pale in comparison to the type of conduct that courts routinely require even pro se parties to take to show their diligence." *Wilson v. City of New York*, Nos. 15-cv-07368 (AJN) (KHP), 15-cv-07369 (AJN) (KHP), 2017 WL 9538860, at *6 (S.D.N.Y. Apr. 4, 2017) (collecting cases), *report and recommendation adopted*, Nos. 15-cv-07368 (AJN), 15-cv-7369 (AJN), 2017 WL 2693599 (S.D.N.Y. June 19, 2017); *see also Temple v. N.Y. Cmty. Hosp. of Brooklyn*, 933 N.Y.S.2d 321, 323 (2d Dep't 2011) (finding no due diligence under [C.P.L.R.] § 1024 given lack of pre-filing efforts to identify the John Doe defendants and noting that plaintiff's "limited discovery demands . . . served prior to the expiration of the statute of limitations" were insufficient to show diligence because "when the responses received were less than adequate, the plaintiff failed to promptly seek further discovery"); *Maccharulo v. Gould*, 643 F. Supp. 2d 587, 596–97 (S.D.N.Y. 2009) (finding lack of diligence under federal rule where plaintiff waited until end of statutory period to attempt to identify proper defendants).

While I am mindful of Plaintiff's pro se status and his attempts to file a FOIL request, he concedes that he was aware that a court order was the proper method to obtain information related to the identity of the John Doe defendants. Plaintiff consulted an attorney who explicitly

told him that a FOIL request would likely be unsuccessful, and when such requests were indeed unsuccessful, he waited over a year to file his Original Complaint. *Cf. JCG v. Ercole*, No. 11 Civ. 6844(CM)(JLC), 2014 WL 1630815, at *14 (S.D.N.Y. Apr. 24, 2014) (stating that pro se plaintiff's allegation that his FOIL request went unanswered was "a last-minute attempt to obtain further information about his claims" and was "insufficient to establish due diligence" under C.P.L.R. § 1024), *report and recommendation adopted*, No. 11 Civ. 6844(CM)(JLC), 2014 WL 2769120 (S.D.N.Y. June 18, 2014). Plaintiff does not identify any reason for why he waited more than a year after receiving advice from attorneys concerning the appropriate course of action.

Moreover, even after Plaintiff filed his Original Complaint, he did not request a court order to identify John Doe defendants—despite his knowledge of the availability of such an order—nor does he explain why he failed to do so. Rather, I issued the Valentin Order on January 5, 2015, *sua sponte*, nearly a month after the statute of limitations for all of Plaintiff's claims had expired. (*See* Doc. 7.) In other words, the newly-added allegations in the TAC confirm that Plaintiff knew what was necessary to identify the John Doe defendants more than a year prior to filing the Original Complaint. Instead of taking action, he failed to take the appropriate procedural steps, which was directly contrary to the advice he was given by two attorneys and NYPD employees. While this is not a case where Plaintiff took no steps to ascertain Defendants' identities, *see Vasconcellos*, 2014 WL 4961441, at *9, I find Plaintiff's actions insufficient to satisfy the requirements of C.P.L.R. § 1024. Accordingly, because Plaintiff did not exercise due diligence to identify the John Doe defendants prior to the expiration of the statute of limitations, the TAC does not relate back under Rule 15(c)(1)(A).

Finally, Plaintiff does not appear to raise equitable tolling as a defense to the City

Defendants' motion to dismiss, nor do the City Defendants address such an argument in their papers. Nevertheless, in light of Plaintiff's pro se status, I address this issue *sua sponte*. As discussed above, the record does not reflect that Plaintiff exercised due diligence or that the Individual City Defendants otherwise prevented him from timely commencing suit. *See Abbas*, 480 F.3d at 642. Accordingly, equitable tolling does not apply, and Plaintiff's § 1983 claims against the Individual City Defendants are time-barred and must be dismissed.

### 3. Claims against Dr. Vassallo

Like the Individual City Defendants, Dr. Vassallo also argues that Plaintiff's claims against her are time-barred. (Vassallo Mem. 7–13.) For the reasons that follow, I agree.

"[A] claim of deliberate indifference of medical needs brought under Section 1983 accrues when medical treatment is denied. *Traore v. Police Office Andrew Ali Shield*, No. 14 Civ. 8463 (ER), 2016 WL 316856, at *5 (S.D.N.Y. Jan. 26, 2016). Plaintiff's § 1983 claims against Dr. Vassallo thus accrued on December 5, 2011—the date Dr. Vassallo allegedly denied Plaintiff treatment for his injuries. (TAC ¶¶ 205–07.) The statute of limitations for Plaintiff's claims against Dr. Vassallo therefore expired on December 5, 2014. Although Plaintiff filed the Original Complaint on November 20, 2014, two weeks before the limitations period ran, his claims were asserted against "John Doe #4 – Doctor at Bellevue Hospital that read my x-rays on 1215/11 at approx. 6:30 p.m.; and discharged me." Plaintiff eventually identified Dr. Vassallo by name in the FAC, SAC, and TAC (filed on October 6, 2015, February 22, 2016, and February 2, 2017, respectively), but did so well after the limitations period had run.

Plaintiff argues that his claims accrued on February 22, 2012 because that is when he was informed by a "NYCDOC Doctor" that he had sustained four pelvic fractures, spinal disc tissue damages, and nerve damage. (TAC ¶¶ 11–15; *see also* Pl.'s Opp. 3.) Even if Plaintiff is

correct—which he is not—Plaintiff did not name Dr. Vassallo as a defendant until he filed the FAC, which was filed on October 6, 2015, more than three years after February 22, 2012. Thus, Plaintiff's claims are time-barred unless the amended complaints relate back to the Original Complaint regardless of whether Plaintiff's claims accrued on December 5, 2011 or February 22, 2012.

As with his claims against the Individual City Defendants, Plaintiff cannot establish that his claims against Dr. Vassallo relate back to the date of the Original Complaint. As noted above, Rule 15(c)(1)(C) permits the relation back of an amendment due to a mistake concerning the identity of parties. However, the Second Circuit has explicitly held that "the lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity.'" *Hogan*, 738 F.3d at 518 (quoting *Barrow*, 66 F.3d at 470). Therefore, Plaintiff cannot rely on Rule 15(c)(1)(C) to save his claims against Dr. Vassallo.

Rule 15(c)(1)(A), which permits an amended pleading to relate back when "the law that provides the applicable statute of limitations allows relation back," is equally inapplicable. Fed. R. Civ. P. 15(c)(1)(A). C.P.L.R. § 1024, the statute that provides a mechanism for asserting claims against John Doe defendants under New York law, requires that a party "exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name." *Hogan*, 738 F.3d at 519 (citation omitted). As with his claims against the Individual City Defendants, Plaintiff fails to show that he exercised any such due diligence. Although Plaintiff contends for the first time in the TAC that he attempted to identify John Doe #4, there is no support or detail from Plaintiff indicating that he exercised any due diligence prior to the expiration of the statute of limitations. For example, Plaintiff did not request his medical records from Bellevue Hospital in the three years following his discharge, nor does he allege that he

made any effort to do so prior to the expiration of the limitations period. Although Plaintiff alleges that he consulted an attorney in mid-April 2013, (TAC ¶¶ 36–38), and that the attorney advised him about FOIL requests and *Valentin* orders, Plaintiff does not contend that he made a FOIL request as to Dr. Vassallo or made any other efforts to determine her identity.

Nor can Plaintiff rely on New York's relation-back doctrine set forth in C.P.L.R. § 203(c). As described above, the third requirement of C.P.L.R. § 203 "closely tracks the federal relation-back requirement of Rule 15(c)(1)(C)." *Vasconcellos*, 2014 WL 4961441, at *8. Consequently, because Plaintiff cannot satisfy Rule 15(c)(1)(C), he also fails to satisfy C.P.L.R. § 203 with respect to his claims against Dr. Vassallo.

Finally, as with the Individual City Defendants, Plaintiff does not appear to raise equitable tolling as a defense to Dr. Vassallo's motion to dismiss. Nevertheless, as discussed above, the record does not reflect that Plaintiff exercised due diligence or that Dr. Vassallo otherwise prevented him from timely commencing suit. Accordingly, equitable tolling does not apply, and Plaintiff's § 1983 claims for deliberate medical indifference against Dr. Vassallo are time-barred and must be dismissed.[10]

For the reasons stated above, I dismiss Plaintiff's claims against the Individual City Defendants and Dr. Vassallo on statute of limitations grounds. While there appear to be numerous other procedural and substantive defects in Plaintiff's claims, I decline to address those deficiencies and grant Defendants' motions to dismiss on statute of limitations grounds

---

[10] Plaintiff's claims against Dr. Vassallo under the Emergency Medical Treatment and Labor Act ("EMTALA") were asserted for the first time in the TAC, and thus were beyond the scope of leave granted. (*See supra* Part IV.A.) Moreover, Plaintiff voluntarily dismissed his EMTALA claims, along with his failure to intervene claims, against Dr. Vassallo. (*See* Pl.'s Opp. 2 (stating that Plaintiff "[v]oluntarily dismisses EMTALA Claims against Defendant VASSALLO and withdraws [those] causes of action" and "[v]oluntarily dismisses Failure to Intervene Claims against Defendant VASSALLO and withdraws [those] causes of action").) I thus deem these claims waived and dismiss them with prejudice.

alone. I turn next to Plaintiff's remaining claim against the City for municipal liability.[11]

## C. *Municipal Liability*

A municipality or local government is liable under Section 1983 "if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal quotation marks omitted). Local governments are not vicariously liable under Section 1983, and instead are responsible only for their own illegal acts. *Id.* "A municipality may, however, be liable under § 1983 when the alleged deprivation of constitutional rights is the result of action pursuant to an official municipal policy, or the municipality exhibits deliberate indifference to the possibility of such a constitutional violation." *Williams v. City of New York*, 690 F. Supp. 2d 338, 343 (S.D.N.Y. 2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)). In addition, "the deprivation of the plaintiff's rights [must be] caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012).

Courts in this Circuit have held that "the mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Bradley v. City of New York*, 08 Civ. 1106 (NGG), 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)); *see also Bender v. City of New York*, No. 09 CV 3286(BSJ), 2011 WL

---

[11] Plaintiff's *Monell* claims are not necessarily time-barred. "Since an actionable claim under § 1983 against a county or municipality depends on a harm stemming from the municipality's policy or custom, a cause of action against the municipality does not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a county policy or custom." *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) (citation and internal quotation marks omitted). It is entirely unclear from the TAC when Plaintiff claims he became aware of the existence of a policy or custom, but in light of Plaintiff's pro se status, I will assume he became aware of such claims after the expiration of the statute of limitations on his claims against the Individual Defendant and Dr. Vassallo. Accordingly, I will consider the merits of Plaintiff's municipal liability claim against the City.

4344203, at *13 (S.D.N.Y. Sept. 14, 2011) (dismissing municipal liability claim based on vague allegations of negligent hiring and supervision). Thus, a plaintiff's claim is insufficient where he merely states conclusory allegations of a municipal policy or custom and fails to allege facts from which the court may infer an actual causal link between the policy and alleged constitutional violation. *See, e.g.*, *Cuevas v. City of New York*, No. 07 Civ. 4169(LAP), 2009 WL 4773033, at *4 (S.D.N.Y. Dec. 7, 2009) ("Baldly asserting that Plaintiff's injuries are the result of the City's policies does not show this Court what the policy is or how that policy subjected Plaintiff to suffer the denial of a constitutional right.").

Here, Plaintiff's municipal liability claim fails because he has not offered evidence of any municipal policy or custom sufficient to impose liability. Plaintiff asserts, without offering any supporting factual allegations, that the City has "Go Along to Get Along" and "Passing the Buck" policies that influence employees to participate in various constitutional law violations and ignore constitutional law violations when they are observed. (*See, e.g.*, TAC ¶¶ 108–09.) Additionally, Plaintiff identifies various cases, including "the Abner Louima case, the Amadou Diallo case, the Sean Bell case, and the Eric Garner case," and refers to a "New York Magazine" article about prison conditions at Rikers Island, which he attached to the TAC. (*Id.* ¶¶ 94, 118.) Plaintiff's references to other instances of police action that resulted in cases being brought against New York City—without any allegations as to the ultimate disposition of those matters— are insufficient to allege a practice so widespread as to amount to a policy or custom. *See, e.g.*, *Walker v. City of New York*, No. 12 Civ. 5902(PAC), 2014 WL 1259618, at *3 (S.D.N.Y. Mar. 18, 2014) (holding that plaintiff's reliance on ten complaints, "none resulting in an adjudication of liability," over the span of a decade, "hardly suggests the frequency or pervasiveness of the purported custom that is required to state a *Monell* claim"); *Tieman v. City of Newburgh*, No. 13-

CV-4178 (KMK), 2015 WL 1379652, at *17 (S.D.N.Y. Mar. 26, 2015) ("[T]he fact that there were allegations of thirteen instances of excessive force during arrests over four years (none of which involved findings or admissions of culpability) . . . does not plausibly demonstrate that the use of excessive force during arrest was so frequent and pervasive to constitute a custom."). Moreover, Plaintiff does not identify an actual custom or policy that resulted in the violation of a constitutional right.  Nor does plaintiff explain how these other instances of police action demonstrate that a particular policy or practice has a causal link to the constitutional rights violations alleged in the TAC.  Accordingly, Plaintiff's municipal liability claim fails.

### D.     *Leave to Amend*

In the event of a dismissal, Plaintiff requests to "preserve his privilege to ask the Court's leave to amend for the sole reason, if it pleases the Court, to render plaintiff's complaint less unwieldy should that be necessary."  (Pl.'s Opp. 22.)  Generally, leave to amend should be "freely given," Fed. R. Civ. P. 15(a), and a pro se litigant in particular "should be afforded every reasonable opportunity to demonstrate that he has a valid claim," *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984).  As such, complaints brought by pro se litigants are often dismissed without prejudice.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that leave to amend should be given unless there is no indication that the pro se plaintiff will be able to assert a valid claim); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795–96 (2d Cir. 1999) (stating that pro se complaints are generally "not dismiss[ed] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated" (internal quotation marks omitted)).  However, where the plaintiff is unable to show that he would be able to amend his complaint in a manner that would survive dismissal, opportunity to re-plead is rightfully denied.  *See Cuoco*, 222 F.3d at 112 (affirming denial of

motion to amend where deficiencies in a pro se litigant's complaint were "substantive" and thus re-pleading was "futile").

Critically, Plaintiff's request to amend is premised on making the TAC more concise— "less unwieldy"—not on curing the pleading defects identified by the motions to dismiss. In any event, Plaintiff cannot cure the deficiencies in the TAC merely by rendering it "less unwieldy." (*See* Pl.'s Opp. 22.) The TAC is Plaintiff's fourth bite at the apple, and I permitted him to file the TAC in light of Defendant's prior motion to dismiss. More importantly, I find that any effort to re-plead Plaintiff's claims would be futile, meaning that a fourth amended complaint would not cure the issues described above. *See Cuoco*, 222 F.3d at 112. Accordingly, I deny Plaintiff's request for leave to amend the TAC, and Plaintiff's claims are dismissed with prejudice.

## V.    Conclusion

For the foregoing reasons, the Defendants' motions to dismiss the TAC, (Docs. 105, 109), are GRANTED, and Plaintiff's claims are dismissed with prejudice. The Clerk of Court is respectfully directed to enter judgment for Defendants and close this case. The Clerk of Court is instructed to mail a copy of this Opinion and Order and the judgment to the pro se Plaintiff.

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: August 3, 2018
      New York, New York

Vernon S. Broderick
United States District Judge